The FIRST NATIONAL BANK OF FORT WORTH, a National Banking Association, Appellant,

v.

Bob BULLOCK, Comptroller of Public Accounts, State of Texas, et al., Appellees.

No. 12987.

Court of Civil Appeals of Texas, Austin.

July 11, 1979.

Rehearing Denied Aug. 1, 1979.

S. G. Johndroe, III, Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, for appellant.

Mark White, Atty. Gen., Connie Ode, Asst. Atty. Gen., Austin, for appellees.

PHILLIPS, Chief Justice.

This is a sales tax case. Appellant seeks to recover certain sums paid to appellees under protest by virtue of the Limited Sales, Excise and Use Tax Act, Tex. Tax.-Gen.Ann. art. 20.01, *et seq.* (1969). Suit

was brought contending that appellees improperly levied taxes (1) on payments made by appellant to four computer software companies for the licensing of appellant to use certain information contained in tapes to be used in programming appellant's computer, and (2) on payments made by appellant to Canteen Corporation for providing a free food service to appellant's employees and guests at appellant's cafeteria located at its place of business.

Following trial to the court, the court held that appellant was not entitled to recover its tax payments under either of the situations noted above and rendered judgment for appellees. Appellant then perfected its appeal to this Court.

We reverse and render the judgment of the trial court in part and affirm in part.

### I.

Appellant seeks recovery of taxes paid under protest on payments it made to four computer software companies for the licensing of appellant to use certain information. Appellant paid over $109,000.00 for four programs or sets of instructions ("computer software") which enabled appellant's computer to perform deposit and lending functions and process general accounting. The software was contained on magnetic tapes, probably four in number, but the testimony showed that the information could have been transmitted by keypunch cards, telephone or various other methods.

■ The law places a tax on a sale of tangible personal property. Tangible personal property is defined as "personal property which may be seen, weighed, measured, felt or touched, or which is in any other manner perceptible to the senses." Tex. Tax.-Gen.Ann. art. 20.01(P) (1969). To determine whether a sale is of tangible or intangible property, the courts apply the "essence of the transaction" test. *Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166 (Tex.1977). If the object or essence of the sale is intangible property, then the transaction is not taxable. We hold the essence of this transaction was not the four tapes, but, instead, the purchase of the computer process, an intangible.

An important factor to be considered in arriving at this determination is the fact that the desired information could have been transferred in several different ways. *Id.; Williams and Lee Scouting Service, Inc. v. Calvert*, 452 S.W.2d 789 (Tex.Civ. App.1970, writ ref'd). Some of the possible methods would not have involved a tangible object at all. For example, appellant's computer could have been programmed over the telephone or by hand.

In *Statistical Tabulating*, the Court held that processed data contained in a coded computer card was an intangible and not taxable. In *Williams and Lee Scouting*, statistical data on oil and gas well production was compiled and mailed to subscribers in printed reports each week. The sale was not taxed. The purchasers in both *Williams and Lee Scouting* and *Statistical Tabulating* were desirous of something beyond the tangible object involved in the transaction. Unlike a phonograph record or filmstrip, when the information on the tape, in the present case, is transferred to the computer, the tape is no longer of any value or importance to the user. *State v. Central Computer Services, Inc.*, 349 So.2d 1160 (Ala. 1977); *Commerce Union Bank v. Tidwell*, 538 S.W.2d 405 (Tenn.1976).

■ Appellee contends that this case is distinguishable from *Statistical Tabulating* in that the software in the latter case was "customized," because it was developed specially for the purchaser. The tapes in our case are "canned" programs, since they are standard items sold to numerous customers with only slight modifications to conform to each purchaser's use. Appellee argues that the service characteristic is present only with "customized" programs. We do not agree that this is a valid distinction. The test in each case is not whether the product is "customized" or "canned," but whether the object of the sale is tangible personal property. See *District of Columbia v. Universal Computer Associates, Inc.*, 151 U.S. App.D.C. 30, 465 F.2d 615 (1972). See also *Commerce Union Bank v. Tidwell, supra.*

In *Williams and Lee Scouting*, the weekly report of oil and gas data was a "canned" publication in that the same information was mailed to many subscribers. There was no service performed for any of the customers that was different from that obtained by all the rest of the subscribers.

■ Any ambiguity which arises in a particular case must be resolved in favor of the taxpayer, because a taxing statute must be construed strictly against the taxing authority and liberally in favor of the person sought to be held. *Bullock v. Statistical Tabulating Corp., supra; Wilson Communications, Inc. v. Calvert*, 450 S.W.2d 842 (Tex.1970).

We hold that although tangible personal property, i. e., tapes, did change hands, the sale of a license for computer software to appellant was the sale of intangible property, and, therefore, not taxable. The judgment of the trial court is reversed and judgment here rendered that appellant recover the taxes levied on sale of computer software, together with interest as provided by law.

## II.

■ With respect to the second question concerning payments made by appellant to Canteen Corporation, we hold that the tax in question was due and affirm the judgment of the trial court in this respect.

· Appellant entered into an agreement with Canteen Corporation for it to prepare meals for appellant's employees and guests at appellant's place of business using appellant's cooking and serving equipment. These meals were to be furnished free to the employees and guests. Canteen Corporation purchases the food products and prepares and serves them.

Appellant contends that Canteen Corporation was its agent and that no sales tax was generated in a transaction in which appellant's employees were given meals without cost.

The trial court held that Canteen Corporation operated in all aspects of its relationship with appellant as an independent contractor, appellant having only limited control over Canteen's operation of appellant's cafeterias. The court also held that, consequently, the sum of money paid by appellant to Canteen Corporation in return for Canteen's preparation and serving of food to appellant's officers, employees, and guests constituted a sale at retail of tangible personal property, taxable pursuant to the Limited Sales, Excise and Use Tax Act. Tex. Tax.-Gen.Ann. art. 20.01, *et seq.* (1969). We affirm this holding.

The Act imposes a limited sales tax "on the receipts from the sale at retail of all taxable items within this state." Art. 20.02. In Article 20.01(I) a "sale at retail" is defined as "[a]ny sale of a taxable item." Article 20.01(K)(2) in turn defines "sale" so as to include "the furnishing, preparing or serving for a consideration of food, meals, or drinks." "Taxable items" means "tangible personal property." Art. 20.01(W). " 'Receipts' means the total amount of the sale or lease or rental price . . . of the retail sales of taxable items by retailers, valued in money, whether received in money or otherwise. . . ." Art. 20.-01(D)(1). In this case the tangible personal property consisted of food, meals and drinks, the sale of which consisted of the furnishing, preparing and serving of these items for a consideration. *Automatic Canteen Co. v. State Board of Equalization*, 238 Cal.App.2d 372, 47 Cal.Rptr. 848 (1965).

■ The facts of this case do not support appellant's contention that Canteen Corporation was at once agent and independent contractor. Inasmuch as Canteen Corporation was engaged in a single enterprise: namely, the furnishing, preparing, and serving of food, meals and drinks to appellant's employees and guests; and, inasmuch as Canteen Corporation retained the day-to-day control over the enterprise, it was an independent contractor making sales at retail of tangible personal property. The Texas cases stress the right of control. Where one has the right to control the end sought to be accomplished but not the means and details of the accomplishment; that is, only what shall be done, not how it

shall be done, the person employed acts as an independent contractor and not as an agent. See *Truck Insurance Exchange v. Cartmill*, 385 S.W.2d 277 (Tex.Civ.App.1964, writ ref'd n. r. e.); · *W. D. Haden Co. v. Ryman*, 362 S.W.2d 133 (Tex.Civ.App.1962, writ ref'd). An employer who exercises only such control over an independent contractor as is necessary to insure performance of the contract, in order to accomplish the results contemplated by the parties, does not thereby make the contractor an employee of the company. *J. A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728 (Tex.Civ. App.1967, writ ref'd n. r. e.). Even an occasional assertion of control by the employer does not destroy the settled relationship between the parties. *Newspapers, Inc. v. Love*, 380 S.W.2d 582 (Tex.1964).

The test in cases of an alleged disregard of a written contract that indicates on its face an employer-independent contractor relationship (as we have in the case at bar) is whether the employer *in fact* assumed and exercised such detailed control over the performance of the work so as to make the other party a servant. *Mid-Continent Freight Lines, Inc. v. Carter Publications, Inc.*, 336 S.W.2d 885 (Tex.Civ.App.1960, writ ref'd).

Consistent with these tests, we hold that Canteen Corporation was an independent contractor and that the charge for its services is subject to the sales tax. Appellant offers as proof of an agency relationship the fact that Canteen Corporation was required by appellant to purchase some food products from customers of appellant. The contract between appellant and Canteen authorizes appellant to designate the hours of operation, and further states: "Canteen shall *cooperate* at all times with the owner in determining operating policies of the business conducted by Canteen hereunder, including wage scales, selling price of foods, portions, menus and recipes." (Emphasis added). Appellant owned the equipment used by Canteen.

The testimony also reflects that Canteen had control over the day-to-day details; Canteen hired all kitchen employees and paid them; Canteen purchased all necessary licenses; Canteen replaced any worn-out items; and that Canteen kept all day-to-day records.

We hold that the consideration paid by appellant to Canteen for furnishing, preparing and serving meals is taxable. Appellant relies on *Szabo Food Service, Inc. v. State Board of Equalization*, 46 Cal.App.3d 268, 119 Cal.Rptr. 911 (1975). In *Szabo*, the employees paid for their meals, which were furnished by Szabo Food Service, Inc. The employer subsidized any losses of the caterer. The subsidies were held not taxable because they were not the consideration for the meals, but merely a guarantee of a reasonable profit. The only consideration was provided by the employees who paid for the meals. The present case is distinguishable in that the only consideration was provided by appellant.

The judgment of the trial court is reversed and rendered in part, and, in part, affirmed.