DAILY INTERNATIONAL SALES
CORPORATION, Appellant,

v.

EASTMAN WHIPSTOCK, INC., et
al., Appellees.

No. 01–83–0019–CV.

Court of Appeals of Texas,
Houston (1st Dist.)

Oct. 20, 1983.

James J. Elacqua, Peter J. Shurn, III, William C. Boyd, Houston, for appellant.

J. Michael Baldwin, William C. Slusser, Houston, for appellees.

Before EVANS, C.J., and DOYLE and COHEN, JJ.

## OPINION

COHEN, Justice.

The appellant sued the appellees claiming that they wrongfully appropriated and used confidential trade secrets regarding a mechanical drilling jar manufactured by the appellant and leased by the appellees to its customers, pursuant to a license contract between the parties.

The appellant's drilling jar was patented in the United States in 1965 and 1966, at least two years before the first licensing agreement between the parties in 1968. The appellees continuously marketed the appellant's jar under various agreements until April 18, 1982. The two patents on the jar expired on September 26, 1982 and February 8, 1983.

The appellant brought suit on July 20, 1982, requesting damages for breach of contract and a temporary injunction prohibiting the appellees from using the wrongfully acquired trade secrets to make and market their own jar in competition with the appellant. The trial court heard six days of testimony from the appellant and then denied the temporary injunction without hearing witnesses called by the appellees. Nevertheless, the appellee's president, Mathew Riordon, was called as an adverse witness and gave 531 pages of testimony in a 1085 page record. Thus, the trial court heard evidence from both sides before deciding the case.

The appellant argues that the court below abused its discretion in denying the petition for temporary injunction because the evidence clearly showed that the appellee breached a confidential relationship established in a contract of August 25, 1978, and was using the confidential information to the appellant's detriment to create its own drilling jar which was identical to, and was being marketed in competition with, that of the appellant. It is undisputed that the appellee did create and market a drilling jar substantially identical to the appellant's jar and that the appellee accomplished this by copying the appellant's jar by tracing and measuring the dimensions of one of the appellant's jars, all during the term of the licensing agreement.

The contractual language upon which appellant relies states:

DISC [appellant] hereby appoints EWI [appellee] as its nonexclusive agent to rent, or lease, the jar in the aforementioned territories. *This agreement does not license EWI to acquire title to the jar, nor does it license EWI to manufacture, or reproduce the jar.* (emphasis supplied)

The parties hereto intend this agreement to affect the appointment of EWI as agent only to rent or lease, the jar in the afore mentioned territories. No other relationship is intended to be created between the parties hereto, . . .

The issue before this court is not whether the appellant proved that it was wronged by the appellee. That will be decided at a trial on the merits. The only issue before us is whether the appellant was entitled, as a matter of law, to a temporary injunction to preserve the status quo pending a trial on the merits.

We are guided by the familiar rules concerning appellate review in a temporary injunction case. Review is "strictly limited to determination as to whether there has been a clear abuse of discretion by the trial court in granting or denying the interlocutory order." *Davis v. Huey,* 571 S.W.2d 859, 861–62 (Tex.1978). The appellate court is not to substitute its judgment for that of the trial court. The appellate function is merely to determine whether the court's action was so arbitrary as to exceed the bounds of reasonable discretion, and "the mere fact or circumstance that a trial judge may decide . . . different from what an appellate judge would decide . . . does not demonstrate that an abuse of discretion has occurred." *Jones v. Strayhorn,* 159 Tex. 421, 321 S.W.2d 290, 295 (1959); *Davis v. Huey, supra,* 571 S.W.2d at 862; *Landry v. Travelers Insurance Company,* 458 S.W.2d 649, 651 (Tex.1970). When, as in the instant case, no findings of fact or conclusions of law have been filed, the order will be upheld if there is any basis in the record to support the order under any legal theory. *Davis v. Huey, supra,* 571 S.W.2d at 862–63.

A party seeking a temporary injunction must prove the existence of a probable right to permanent relief and a probable injury. *Manning v. Wieser,* 474 S.W.2d 448, 449 (Tex.1971). The record does not show that the appellant met this burden.

The facts of this case are strikingly similar to *Luccous v. J.C. Kinley Company,* 376 S.W.2d 336 (Tex.1964), in which the Supreme Court unanimously reversed and dissolved an order granting a temporary injunction where it was shown that the subject matter of the alleged trade secret was the same as that protected by a patent, and the licensee gained knowledge of the invention by way of the licensing relationship *subsequent* to the issuance of a patent. Similarly, in the instant case, the subject matter of the licensing agreement, the Daily drilling jar, was the subject of two patents, and the appellees, as licensees, gained knowledge of the Daily jar subsequent to the patents. In *Luccous,* the Court distinguished two cases relied upon by the appellant, *Hyde Corporation v. Huffines,* 158 Tex. 566, 314 S.W.2d 763 (1958) and *K & G Oil Tool and Service Co. v. K & G Fishing Tool Serv.,* 158 Tex. 59, 314 S.W.2d 782 (1958). The distinguishing fact supporting the granting of the injunction in both cases was that the defendant had acquired his knowledge from a confidential relationship which existed *before* the issuance of a patent on the product. Furthermore, in *K & G Oil Tool,* the licensing agreement contained a specific provision prohibiting disassembly of the tool, which both parties understood was intended to prevent disclosure of the internal construction of the tool. Neither factor was present in *Luccous* and neither is present in this case. The Court distinguished another case relied on by the appellant, *Welex Jet Services Inc. v. Owen,* 325 S.W.2d 856 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n.r.e.) stating:

> The Court of Civil Appeals cites the case of *Welex Jet Services v. Owen* . . . as authority for the proposition that the issuance of a patent is not a public disclosure which destroys a "trade secret." That case presented a situation where the subject matter of the trade secret protected by the court was not the same as the invention covered by the patent, . . . thus, unlike the present case, the trade secrets involved were not the inventions already protected by patent grants. The [Supreme Court] did not hold that a "trade secret" may simultaneously exist

with a patent grant when both cover the same subject matter.

*Luccous v. J.C. Kinley Company, supra,* 376 S.W.2d at 339–40.

In this case, as in *Luccous,* the alleged trade secret covers the same subject matter as the patent. As the Supreme Court stated, "It was not held [in *Hyde Corporation v. Huffines*] that the trade secret *itself* survived the complete disclosure in the patent grant." (Court's emphasis) *Luccous v. J.C. Kinley Company,* 376 S.W.2d at 339.

 The record supports the trial court's conclusion that the appellant failed to prove the existence of a probable right and a probable injury. Much conflicting testimony was heard regarding whether the information appropriated by the appellee was, in fact, confidential. "It is self-evident that the subject matter of a trade secret must be secret." *Luccous v. J.C. Kinley Company, supra,* 376 S.W.2d at 338. Despite fourteen years of a contractual relation between the corporate parties, they never made a written agreement to preserve confidential information. Recognizing this, the appellant argues that a duty of confidentiality should be implied, as a matter of law, from the relation of the parties. Although an express contractual provision is not required to establish a duty of confidentiality, the absence of an agreement restricting disclosure of information is a factor the court may consider. Other factors include the nature and extent of security precautions taken by the possessor to prevent acquisition of information by unauthorized parties, and the degree to which the information has been placed in the public domain or rendered readily accessible through publication or marketing efforts. *Lamons Metal Gasket Company v. Traylor,* 361 S.W.2d 211 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.); *National Rejectors, Inc. v. Trieman,* 409 S.W.2d 1, 40–42 (Mo. 1966); *Midland-Ross Corp. v. Yokana,* 293 F.2d 411, 412–13 (3rd Cir.1961).

There was considerable evidence of the absence of security precautions, including evidence that the jars were sometimes sold by the appellant to third parties and that the appellee was required to purchase a damaged jar, apparently without restrictions, for $86,175.00. Maintenance manuals disclosing detailed drawings of the jar were provided to vendors to assist them in repairing or producing parts of the jar without notice of confidentially. No documents were stamped or labeled with the word "confidential" or like warnings. The appellee testified that it was not aware of any duty of confidentiality. Considerable information was conveyed at trade shows and in marketing brochures. Under this state of the evidence, the trial court could have found that the information appropriated was not confidential and such a conclusion, whether correct or not, would not be an abuse of discretion.

The district court also could have found that there was no confidential relationship between Daily and Eastman. As the Supreme Court stated in *Hyde Corporation v. Huffines, supra,* 314 S.W.2d at 777:

> We have not held as a matter of law that the relationship of licensor and licensee in itself created a confidential relationship between the parties. It is undoubtedly true . . . "the existence of a confidential relationship between a licensor and licensee is to be determined in each case" and it does not follow that merely because the parties occupied a position of licensor and licensee a confidential relationship results as a matter of law.

 Further, although one of the written agreements between the parties is labeled an "agency" agreement, such a designation is not controlling, and the legal effect of the relation must be determined from the provisions of the contract and the facts of the relationship. As stated in *First National Bank v. Bullock,* 584 S.W.2d 548, 551–52 (Tex.Civ.App.—Austin 1979, writ ref'd n.r. e.):

> The Texas cases stress the right of control. Where one has the right to control the end sought to be accomplished but not the means and details of the accomplishment, that is, only what shall be done, not how it shall be done, the person

employed acts as an independent contractor and not as an agent.

Thus, even though one acts for and in behalf of another, if he is not under that other person's control, the relation of agency does not exist. *Stanford v. Dairy Queen Products,* 623 S.W.2d 797, 801 (Tex.App. Austin 1981, writ ref'd n.r.e.). See also *Falls Rubber Co. v. LaFon,* 256 S.W. 577, 579 (Tex.Comm.App.1923, judgment adopted). The evidence in the instant case showed that the appellee was empowered to roam the world to find customers for the appellant's product with little or no supervision, control, or interference from the appellant. The trial court could certainly have concluded that this relationship was not one recognized in Texas law as an agency, no matter what its label, and that, consequently, no fiduciary duty of confidentiality was to be automatically implied as a matter of law.

Finally, the trial court could have concluded that damages constituted an adequate legal remedy, if the appellant prevailed at trial. The major harm which the appellant alleged, that it would lose business and profits as a result of competition with the appellee, is curable by an award of damages. Appellant also feared that the appellee's knowledge of the Daily jar will be disclosed to third parties, who presumably would also compete with the appellant and cause further loss of profits. There was no evidence that such disclosure was occurring or that the appellee intended to make such disclosures at any future time. The granting of a temporary injunction in such circumstances was held improper in *Luccous v. J.C. Kinley Company, supra,* 376 S.W.2d at 341, where the Court stated:

> Since there is no evidence that defendants failed to return any sand-line cutters to plaintiff, the temporary injunction is futile. If the evidence shows no intention on the part of a defendant to do the things sought to be enjoined, then an injunction should be denied.

See also *Custom Drapery Co., Inc. v. Hardwick,* 531 S.W.2d 160, 166 (Tex.Civ. App.—Houston [1st Dist.] 1975, no writ).

In the instant case, as in *Luccous v. J.C. Kinley Company, supra,* 376 S.W.2d at 341, the appellant also asserted a cause of action for breach of contract. The Court in *Luccous* held that damages constituted an adequate remedy at law, stating:

> Plaintiff argues this is a breach of contract as well as a trade secret case, and in his petition he sets forth several alleged violations by defendants of the license agreement. The only issue necessary for a decision by this court is whether or not the lower courts have erroneously enjoined defendants from using sand-line cutters allegedly "copied" or "secured" from plaintiff and from personally manufacturing such tools now and in the future. It is undisputed by the testimony of the plaintiff himself that the license agreement has been terminated by written agreement since February 21, 1962. This being so, it has no relevancy as to the propriety of the injunction. If defendants have breached the terms of the agreement, plaintiff's remedy is damages, and not injunction.

See also *National Rejectors, Inc. v. Trieman, supra,* 409 S.W.2d at 42–44.

The remaining cases relied on by the appellant are all distinguishable on their facts from the instant case and from the *Luccous* case. *Gillen v. Diadrill, Inc.,* 624 S.W.2d 259, 263 (Tex.Civ.App.—Corpus Christi 1981, no writ) and *Weedeater Inc. v. Dowling,* 562 S.W.2d 898 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.), were both actions to enforce a covenant not to compete against a resigning employee and did not discuss patent coverage of the product in question as part of the rationale for the courts' holdings. In *Thermotics, Inc. v. Bat-Jac Tool Co., Inc.,* 541 S.W.2d 255 (Tex. Civ.App.—Houston [1st Dist.] 1976, no writ) it was undisputed that a confidential relation existed because the defendants were employees contractually bound not to disclose trade secrets, and the misappropriated documents were clearly stamped confidential.

Points of error one and two are over-ruled.

The district court's order is affirmed.