Dorothy CHANDLER, Individually and as Administratrix of the Estate of Jessie Chandler, Jr., Appellant,

v.

Jack CASH, M.D., Appellee.

No. 06–99–00048–CV.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 13, 2000.

Decided March 21, 2000.

Rehearing Overruled May 16, 2000.

---

Ben C. Martin, Lauren M. Phelps, Edward W. Sampson, Law Offices of Ben C. Martin, Dallas, for appellant.

James R. Boston, Jr., Matthew B.E. Hughes, James R. Boston & Associates, P.C., Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Dorothy Chandler, individually and as administratrix of the estate of her son, Jessie Chandler, Jr., sued Dr. Jack Cash, Dr. Vera Reed, and the Harrison County Hospital Association to recover damages for the death of Jessie Chandler allegedly resulting from the negligence of Dr. Reed. Dr. Reed was an emergency room physician at the Marshall Memorial Hospital who examined Jessie Chandler on July 1, 1995, and released him. Jessie Chandler died the following day. Dr. Cash had contracted with the hospital to provide staffing of physicians for the hospital emergency room. Dr. Cash engaged Dr. Reed as one of the emergency room physicians.

The trial court severed the case against Dr. Cash from Mrs. Chandler's other claims, and in response to Dr. Cash's motion, rendered summary judgment denying Mrs. Chandler's claims against Dr. Cash. Mrs. Chandler appeals, contending that summary judgment was improper because there is a genuine fact issue on her claim that Dr. Cash is liable for Dr. Reed's alleged negligence under the doctrine of *respondeat superior.*

Mrs. Chandler pleaded that the "defendants, through their agents, servants, or employees," departed from standard medical care by (1) failing to refer Jessie Chandler to a proper specialist for diagnosis, (2) failing to admit Jessie Chandler to a hospital for evaluation and monitoring, and (3) failing to timely diagnose and treat Jessie Chandler.

In her pleadings and her response to Dr. Cash's motion for summary judgment, Mrs. Chandler contended that Dr. Reed was negligent in her diagnosis and in her failure to refer and admit Jessie Chandler, and that Dr. Cash is liable for Dr. Reed's negligence under the doctrine of *respondeat superior* because he retained such a right of control over the details of Dr. Reed's work as to make her his employee or agent. She contends that Dr. Cash's contract with the hospital obligated him to supervise and review the emergency room physicians' work and ensure that all emergency room patients were properly evaluated, and that these obligations rendered Dr. Reed the legal employee or agent of Dr. Cash. Mrs. Chandler does not, however, plead or rely on a breach by Dr. Cash of his contract with the hospital, nor does she contend that Jessie Chandler was a third-party beneficiary of Dr. Cash's contract with the hospital. Mrs. Chandler also contends this right of control was retained by Dr. Cash in his oral contract engaging Dr. Reed as an emergency room physician.

Dr. Cash's contract with the hospital contains two clauses on which Mrs. Chandler relies to show an obligation on his part to control the details of Dr. Reed's work. The first is Paragraph I.A., which provides as follows:

Dr. Cash agrees to provide continuous 24 hour physician coverage of Hospital's Emergency Department ("Emergency Department") under the terms and conditions herein provided. During the term of this agreement Dr. Cash shall

A. *Physician Coverage.* Arrange for qualified physicians ("Emergency Physicians") to staff the Emergency Department, orient them to their duties, direct their

**72**

activities, and supervise and review their work.

The second is provision III.A., which provides that:

A. *Evaluation.* Dr. Cash shall be responsible for the evaluation of every patient who comes to the Emergency Department to assure that the immediate medical needs of the patient are not jeopardized.

■ The construction of an unambiguous contract is a matter of law for the court. In construing a contract, the court considers the document as a whole and gives effect to the intentions of the parties as expressed in all the contractual provisions. *Heritage Resources, Inc. v. NationsBank,* 939 S.W.2d 118 (Tex.1996). Unless a contract is ambiguous, the intention of the parties is to be drawn from the language actually used by the parties in the contract. *Id.* at 121. No party here contends that the contract between Dr. Cash and the hospital is ambiguous.

■ We conclude that the contractual provision obligating Dr. Cash to staff the emergency room with physicians and "orient them to their duties, direct their activities, and supervise and review their work" does not obligate Dr. Cash to control the details or the means and methods of the emergency physicians' work so as to render the physicians his employees or agents. To destroy the independent contractor status and render a party liable for the negligent acts of an independent contractor, the person engaging the worker must retain the right to control the details and the manner of performance of the contractor's work. *Baptist Mem'l Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 947 (Tex.1998); *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 585–86 (Tex.1964); *Dougherty v. Gifford,* 826 S.W.2d 668 (Tex.App.-Texarkana 1992, no writ). Where an employer has the right to control only the results or the end sought to be accomplished and the contracting party independently determines the details and means of accomplishing that result, an independent contractor

relationship exists, and the rule of *respondeat superior* has no application. *Gladewater Mun. Hosp. v. Daniel,* 694 S.W.2d 619 (Tex.App.-Texarkana 1985, no writ); *Daily Int'l Sales Corp. v. Eastman Whipstock, Inc.,* 662 S.W.2d 60 (Tex.App.-Houston [1st Dist.] 1983, no writ); *First Nat'l Bank of Fort Worth v. Bullock,* 584 S.W.2d 548, 551 (Tex.Civ.App.-Austin 1979, writ ref'd n.r.e.). We conclude that the contractual provision concerning the orientation and direction of the physicians and the review and supervision of their work refers to a general supervision and review of the work to ensure satisfactory results, not to a right of control of the details of the work.

■ Likewise, we find that the contract provision obligating Dr. Cash to "be responsible for the evaluation of every patient" to assure that the immediate medical needs of the patients are not jeopardized is not an obligation to control the details of the physicians' work or to personally evaluate each patient. Rather, considering the contract as a whole, we construe that provision to simply make Dr. Cash responsible for staffing the emergency room with physicians who will properly evaluate the patients. It should be remembered that the complete thrust of Dr. Cash's contract was to obligate him to staff the emergency room with competent physicians. There is no contention here that Dr. Cash failed to staff the emergency room with physicians competent to properly evaluate the emergency room patients. Obviously, the contract did not contemplate that Dr. Cash would personally evaluate each emergency room patient.

■ The uncontroverted summary judgment evidence also showed that Dr. Cash's oral contract with Dr. Reed made her an independent contractor, and not an employee or agent of Dr. Cash. Both Dr. Cash and Dr. Reed testified by deposition that Dr. Reed was an independent contractor and that Dr. Cash had no right to

control the methods or means of her work. The summary judgment evidence shows that Dr. Reed made all her treatment decisions; she did not need Dr. Cash's input or approval; Dr. Cash did not control any of the details of Dr. Reed's diagnoses or treatments; Dr. Cash did not provide any tools or medical equipment for Dr. Reed; and, although Dr. Cash made a preliminary work schedule for Dr. Reed, Dr. Reed was free to change the schedule or not work at all. Dr. Reed was paid by the hour, Dr. Cash did not make any deductions for income tax or Social Security, and Dr. Reed provided all her own liability insurance. None of this evidence was contradicted, and Mrs. Chandler produced no summary judgment evidence to show a right of control on the part of Dr. Cash except the alleged contractual obligations contained in his contract with the hospital.

For the reasons stated, we conclude that the trial court properly rendered a take-nothing summary judgment against Mrs. Chandler.

The judgment of the trial court is affirmed.

## Dissenting Opinion by Justice GRANT.

BEN Z. GRANT, Justice, dissenting.

Because the majority has chosen to ignore the law and the facts, I must dissent.

First, although the majority opinion does not mention it, there are standards for reviewing the granting of summary judgments. Appellate review of summary judgments requires application of the following general standard of review: 1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law; 2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; 3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop-*

*erty Management Co.,* 690 S.W.2d 546, 549 (Tex.1985).

We must determine whether the trial court erred in finding that, as a matter of law, Dr. Reed was an independent contractor of Dr. Cash, and not an employee. When there is no dispute as to the controlling facts and only one reasonable conclusion can be inferred, the question whether the relationship which exists is that of an employee or an independent contractor is a question of law. *Sherard v. Smith,* 778 S.W.2d 546 (Tex.App.-Corpus Christi 1989, writ denied). However, unless the evidence is conclusive and reasonably susceptible to only one inference, this creates a question of fact. *Dougherty v. Gifford,* 826 S.W.2d 668 (Tex.App.-Texarkana 1992, no writ). The possible inferences raised by the evidence in the present case creates a material question of fact. In such a case, a summary judgment is improper. *Benavides v. Moore,* 848 S.W.2d 190 (Tex.App.-Corpus Christi 1992, writ denied). Therefore, I dissent.

First, we should examine the contract that established the control and duties of Dr. Jack Cash in the emergency room of the Harrison County Hospital Association. The contract between Dr. Cash and the Hospital provided that Dr. Cash would, "Arrange for qualified physicians ("Emergency Physicians") to staff the Emergency Department, *orient them to their duties, direct their activities,* and *supervise* and *review* their work." (Emphasis added.) It provided that "Dr. Cash shall be *responsible* for the *evaluation* of *every patient* who comes to the Emergency Department to assure that the immediate medical needs of the patient are not jeopardized." (Emphasis added.) It further provided that "If any patient is in need of emergency treatment as determined by the *Emergency Physician* on duty, *Dr. Cash and the Physicians on duty* in the Emergency Department shall have the responsibility of initiating the treatment indicated by the condition of the patient while effort is made to locate the patient's private physi-

cian, if any." In Section VIII entitled "Overriding Purpose," the contract provided that "The parties acknowledge the primary purpose of this Agreement is to make prompt and appropriate emergency treatment available to the community in which Hospital is located."[1]

The plaintiff has alleged that Dr. Cash is liable for Dr. Reed's negligence under a theory of *respondeat superior*, because Dr. Reed was an employee of Dr. Cash.[2] In determining whether a worker is an employee or an independent contractor, the focus is on the right to control the details of the work. *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex.1993). By the terms of this contract, the Hospital agreed to provide Dr. Cash with control of the hospital emergency room, and Dr. Cash agreed to accept such control so as to ensure that prompt and appropriate treatment was provided to the community. The contract reflects the intent of Dr. Cash to exercise some degree of control over the emergency room staff. Thus, this contract should be considered in analyzing Dr. Cash's intended relationship to Dr. Reed, a doctor on the emergency room staff.

As the majority opinion stated, it is the *right* or *authority* to control, and not the exercise of the right, that determines the status or relationship of the parties. *See Newspapers, Inc. v. Love*, 380 S.W.2d 582 (Tex.1964); *Farrell v. Greater Houston Transp. Co.*, 908 S.W.2d 1 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Dr. Cash's and Dr. Reed's statements that Dr.

Cash did not actually control the details of Dr. Reed's work are not dispositive. We must determine whether Dr. Cash had the right of control. It is the right of control and not the exercise thereof that is determinative. *See Dougherty*, 826 S.W.2d at 679.

No evidence was produced showing any terms of a written contract between Dr. Cash and Dr. Reed. In her oral deposition, Dr. Reed testified as follows:

> Q: Now, did you actually have a written contract with anybody at Marshall Memorial Hospital or Jack Cash, M.D., himself?
>
> A. I'm sure I did. I do not have a copy of it.
>
> Q. Do you know the contents of that written contract?
>
> A. I don't recall.

There is no summary judgment proof that Dr. Cash did not have the right and authority to control. Dr. Cash's and Dr. Reed's legal conclusions that Dr. Reed was an independent contractor is not controlling if the indicia of their relationship reflect a different legal conclusion. *See Sherard*, 778 S.W.2d at 549. When questioned about the relationship, Dr. Reed testified as follows:

> Q. Did you consider that Dr. Cash had the right to review your care and treatment of patients?
>
> A. Yes.

1. This statement of the overriding purpose supports the position that the plaintiff and other patients of the Hospital were third-party beneficiaries under this contract. As such, the plaintiff may have had a cause of action against Dr. Cash for breach of this contract. *MCI Telecomm. Corp. v. Texas Util. Elec. Co.*, 995 S.W.2d 647 (Tex.1999). However, the plaintiff has not raised this issue and has only sued Dr. Cash under the theory of *respondeat superior*.

2. It should be noted that an employer may also be liable for the negligence of an independent contractor where the employer retains some control over the manner in which the independent contractor's work is performed, but does not retain that degree of control which would subject him to liability as a master under the theory of *respondeat superior*. *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985). In such a case, the employer may be liable if he fails to exercise his supervisory control with reasonable care. *Redinger*, 689 S.W.2d at 418; *Bright v. Dow Chemical Co.*, 1 S.W.3d 787 (Tex.App.-Houston [1st Dist.] 1999, no pet.). However, the plaintiff has not raised this issue. The plaintiff has only alleged that Dr. Cash is liable as Dr. Reed's master under a theory of *respondeat superior*.

Q. And that was because he was, in effect, your boss?

A. Yes.

A worker's testimony that another person "was the boss" presents strong evidence of control. *Dougherty,* 826 S.W.2d at 679. Further evidence of control is reflected in the fact Dr. Cash set Dr. Reed's schedule as to when she was to work in the emergency room;[3] and although there is no summary judgment proof on the matter, it could be inferred that Dr. Cash also had the right to discharge her.

Furthermore, although the right to control is the primary factor for determining whether a person is an independent contractor, several other factors should be considered as well. One of the factors to be considered is whether the worker furnishes the necessary tools, supplies, and materials to perform the job. *Pitchfork Land and Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598, 603 (1961). Dr. Reed testified that she provided her own tools, but the summary judgment proof shows that it was the nursing staff, equipment, and supplies that comprised the emergency room setup were made available to Dr. Reed through Dr. Cash's contractual arrangement with the hospital.

The time for which the worker was employed and the method of payment are also recognized factors in determining whether the person is an independent contractor. *Pitchfork Land and Cattle Co.,* 346 S.W.2d at 603. In the present case, Dr. Reed did not undertake to do a specific piece of work, but rather undertook to work on an hourly basis for an indefinite period of time. Dr. Reed was paid sixty to seventy dollars per hour. Payment on a daily basis, for example, has been held indicative of an employee relationship, because it is not based on the amount of output or job completion. *See Dougherty,* 826 S.W.2d at 679. The majority opinion used the fact that Dr. Reed was paid on an hourly basis as an element showing that she was an independent contractor. However, this is the antithesis of an independent contractor who is working on the basis of the amount of output or job completion. Likewise, being hired for an indefinite period of time also suggests an employee relationship.

The fact that Dr. Reed had a special skill that did not require much controlled supervision is not dispositive of the issue of whether she was an independent contractor. *See Ochoa v. Winerich Motor Sales Co.,* 127 Tex. 542, 94 S.W.2d 416 (1936); *see also Dougherty,* 826 S.W.2d at 679.

Indulging every reasonable inference in favor of the nonmovant and resolving any doubts in his favor, as is required in reviewing a summary judgment, I cannot find that the movant was entitled to summary judgment as a matter of law. Furthermore, looking at all the factors in this case about whether Dr. Reed was an employee or an independent contractor, I find that the evidence is not conclusive and is not reasonably susceptible to only one inference. Therefore, a question of fact is created. This case should be reversed and remanded for a new trial.

I respectfully dissent.

---

3. Dr. Reed testified as follows:

Q. Okay. Did Dr. Cash tell you or inform you what particular shifts you were to work during a particular week?

A. Dr. Cash made the schedule, but each doctor was consulted about their schedule. It wasn't just made out and given to you. I mean, there's a preliminary schedule done. And if anybody has a problem or needs time off for anything, if we were—we could change that; but he did not make the schedule.

Q. All right. And how often would he make the schedule for you?

A. Once a month.

Q. After you were given the schedule for that particular month, you were expected to be at the hospital working those specific hours, right?

A. Yes.