

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00014-CV

MAIDA DEVELOPMENT, LLC, APPELLANT

V.

TARANTINO PROPERTIES, INC., ANTHONY JOSEPH TARANTINO,
AND ROBERT MATTHEW POHL, APPELLEES

On Appeal from the 201st District Court
Travis County, Texas[1]
Trial Court No. D-1-GN-11-002704, Honorable Gus J. Strauss, Presiding

August 2, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Maida Development, LLC, (hereinafter "MD") appeals from a traditional and no-evidence summary judgment rendered by the trial court in favor of defendants, Tarantino Properties, Inc., Anthony Joseph Tarantino, and Robert Matthew Pohl. In the trial court, MD sought damages arising from appellees' breach of fiduciary duties owed to MD as agents in a real estate transaction. On appeal, MD contends the trial court erred on a number of bases by granting summary judgment. We will affirm.

---

[1] Pursuant to the Texas Supreme Court's docket equalization efforts, this cause was transferred to this Court from the Third Court of Appeals. See TEX. GOV'T CODE ANN. § 73.001 (West 2013).

Factual and Procedural History

Stephen Maida is the principal of MD and is a licensed real estate salesperson doing business from his Austin-based office. Appellees were also engaged in the real estate business; Tarantino Properties, Inc., whose principal is Tarantino, was the broker sponsoring Pohl's real estate salesperson license. In 2010, Maida began communications with Pohl regarding the sale of the apartment complex at 1101 Shoal Creek Boulevard in Austin. Pohl testified by deposition that, at the time that he began communications with Maida, he already had been actively working on behalf of the seller of that property to secure a buyer. Pohl explained to Maida that the property was an "off market" opportunity. MD contends that Pohl offered to make an offer to the seller on MD's behalf in an effort to convince the seller to consummate a sale with MD.

Ultimately, MD was not successful in purchasing the Shoal Creek property. Alleging that Pohl breached the fiduciary duty he owed to MD, MD sued appellees to recover the future lost profits MD would have realized after it converted the Shoal Creek property to condominiums and sold them.

Appellees filed their Traditional and No-Evidence Motions for Summary Judgment making the following contentions: (1) the summary judgment evidence conclusively established that none of the appellees were agents of MD, (2) the summary judgment evidence conclusively established that appellees had no prior relationship with MD that gave rise to a fiduciary duty, (3) that contracts prepared by MD conclusively established that appellees were not agents for MD, (4) that the summary judgment evidence conclusively established that MD paid no commission to appellees, negating any claim under the Texas Occupations Code, and (5) that there was no

evidence that MD paid any commission to any appellees, negating any liability under the Texas Real Estate License Act. The trial court granted appellees' Traditional and No-Evidence Motions for Summary Judgment and entered a take-nothing judgment in favor of appellees.

On appeal from that judgment, MD contends the trial court erred by granting summary judgment in favor of appellees because the evidence presented was sufficient to raise a fact issue on the following propositions: (1) that Pohl agreed to act and did act as an agent for MD in its efforts to acquire a particular property in Austin, Texas, thereby creating a fiduciary duty owed by Pohl to MD; (2) that a contemporaneous formal fiduciary duty arose out of the agency relationship existing between MD and appellees, rendering any reliance on an informal fiduciary relationship arising from a prior relationship irrelevant; and (3) that an agency relationship and a fiduciary duty existed between MD and appellees regardless of the form of the unexecuted contract relied upon by appellees. MD also contends that the trial court erred when it granted summary judgment because (4) appellees failed to establish as a matter of law that they cannot be held liable for a breach of fiduciary duty in the absence of a commission payment by MD and (5) any evidence of a commission payment by MD to appellees was not required for MD to recover on its claims.

## Standard of Review

The standard of review for a traditional summary judgment asks whether the movant carried the burden of showing that there is no genuine issue of material fact, so that judgment should be granted as a matter of law. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). Summary judgment is proper if the

defendant disproves at least one element of each of the plaintiff's causes of action.  *See D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).   Once the movant establishes a right to judgment as a matter of law, the burden shifts to the nonmovant to produce evidence raising a genuine issue of material fact.  *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).  When reviewing a summary judgment, we take as true all competent evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).

Summary Judgment Evidence

<u>Affidavits and Deposition Testimony</u>

By Maida's affidavit in support of MD's response to appellees' motion for summary judgment, MD presented testimony that Pohl agreed to act as MD's agent and told Maida that he would help find a property that suited MD's criteria.  Maida also testified that, for four months, Pohl and Maida exchanged several email messages and telephone calls in which Maida disclosed to Pohl MD's confidential negotiating positions with respect to its efforts to purchase the Shoal Creek property.  Maida explained that Pohl reported to Maida the progress he was making in convincing the seller to sell to MD.  According to Maida, Pohl agreed not to tell anyone about MD's potential purchase of the Shoal Creek property.  MD maintains that Pohl never indicated to Maida that Pohl was representing the seller of the Shoal Creek property and never made the written disclosure that MD contends was required to make clear that Pohl was representing an entity other than MD.

4

In his deposition testimony, Pohl insisted that he was working on behalf of the seller/owner of the Shoal Creek property, that he had been working in that capacity for some time prior to having any interaction with Maida. He testified that he was working with the Shoal Creek owner within an open listing agreement, a common arrangement when working in that capacity, according to Pohl.

Email messages

MD cites to a number of email exchanges between Pohl and Maida that, according to Maida, indicated to him that Pohl was working on behalf of MD. For instance, Pohl sent Maida an email that stated, "Give me a call when you have a chance, I have a couple of deals I wanted to discuss with you. Thanks." MD also points to portions of the following exchange concerning the Shoal Creek property:[2]

> [Pohl:] I am expecting the rent roll and P&L to be sent over to me today for the [Shoal Creek] deal. I can also set a tour for us sometime next week if that's convenient for you. Call me when you can to discuss in more detail.
>
> [Maida:] How much do they want for the complex?
>
> [Pohl:] $2.5M. If you're interested in pursuing the deal, I will send over the financials and a rent roll. Also, if you want condo comps, I can get those as well…[.]
>
> [Maida:] Toooo high! You said $2,350,000. Are you going to list it?
>
> [Pohl:] If you're able to get $2.35M, I think its worthy of submitting an offer and beginning a negotiation. This is an off market opportunity, not a listing.

As the Shoal Creek property negotiations wore on, Pohl mentioned another property that might be of interest to MD: "Here's another deal that may be of interest. 30 units in

---

[2] In the interest of space and efficiency, we have included the substantive portions of the email messages rather than including certain elements such as greetings and signatures. We have also eliminated some extra line spaces that do not affect the meaning of the messages.

Clarksville . . . ."  More messages were exchanged with respect to the Shoal Creek property, too.  MD points to portions of the following messages from Pohl:

> Looks good Steve, I'm going to send it over and follow up with a call.  I will let you know as soon as I hear anything back and I am hopeful to begin negotiating with her on the deal.  I'll be in touch asap.
>
> Talked with the owner, she mistakenly didn't look at the entire attachment that I sent over, and thought we had only sent a letter from your bank.  I followed up with her yesterday clarifying the situation and resending the offer.  She is discussing the offer with her son and ought to get back to us within a couple days.  I went to bat for you, and really spoke to your sophistication as a buyer with financing in place, hoping to get her [to] agree to the offer as is.  Will let you know more as soon as I hear from her.

MD also highlights Pohl's response to Maida's request for him to try to get the seller to accept MD's offer: "I have been trying to get them to accept the deal as-is for as long as I have been talking with them . . . ."  MD also seizes on Pohl's update that he "should have good feedback for us within the week."  MD relies heavily on certain phrases and word choices in messages from Pohl that indicated to Maida that Pohl was working on behalf of MD.

Contracts

Appellees rely a great deal upon MD's formal written offers to purchase the Shoal Creek property.  On January 20, 2011, Maida submitted MD's first offer to purchase the property.  Appellees emphasize that this offer was prepared by Maida on behalf of MD entirely of its own accord; MD does not contest the fact that Maida prepared the written offer.  This first offer specifically identified Tarantino Properties as "Principal Broker" and Pohl as "Agent."  Maida specifically identified Tarantino Properties and Pohl as agent for Tarantino properties as "represent[ing] Seller only."  The offer further identified Maida as agent of the "Cooperating Broker" and clearly noted that the "Cooperating Broker

6

represents Buyer." The "Special Provisions" section of the offer, also completed by Maida, contained the following language:

> President of the buyer [MD] is a licensed real estate agent in the State of Texas acting as principal on his own behalf in this transaction.
>
> Seller agrees not to enter into any new lease agreements (except month to month) after buyer's feasibility period is over.

Later that same day, Maida prepared a second offer, this one identified the parties in the same roles as the first offer and only modified or clarified the commission structure. MD's offer was rejected by the seller of the Shoal Creek property because the price was too low.

In April 2011, Maida submitted another offer to purchase the property. Again, appellees maintain that Maida prepared this offer unilaterally and on behalf of MD; Maida does not contest that he prepared this third offer. In this offer, Maida identified Tarantino Properties and Pohl as "an intermediary between Seller and Buyer." Appellees urge that they never agreed to act as intermediaries in the transaction. This offer was also rejected by the seller and a competing offer was accepted.

In his affidavit, Maida addressed this matter; he explained that Pohl and Maida had an agreement among themselves to split the commission earned upon final closing of the transaction and that the two men would represent opposing parties only after the property went under contract. So, MD urges, contrary to the indications on the written offers, prior to the time the property went under contract, Pohl agreed to act and, in fact, did act as the agent for MD.

MD contends that the evidence was sufficient to raise a fact issue concerning whether a fiduciary relationship was formed between Maida and Pohl. It contends that

7

a fiduciary relationship was formed when Maida and Pohl created an agency relationship whereby Pohl was acting on behalf of MD, regardless of any prior relationship and regardless of the contrary indications in MD's written offers. MD further contends that, under the Texas Occupations Code, the absence of a payment from MD to Pohl or Tarantino Properties does not affect the liability of Tarantino Properties or Tarantino as its principal.

Agency

MD first contends that the evidence was sufficient to raise a fact issue as to whether Pohl agreed to act and did act as an agent for MD with respect to the Shoal Creek property, thereby creating a fiduciary duty owed by Pohl to MD and for the breach of which appellees are liable.

<u>Applicable Law</u>

Texas law will not presume an agency relationship, and the party who alleges an agency relationship has the burden of proving it.  *See IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007) (per curiam).  And, although the question of agency is generally one of fact, the question of whether a principal-agent relationship exists under established facts is a question of law for the court.  *See Ross v. Tex. One P'ship*, 796 S.W.2d 206, 209–10 (Tex. App.—Dallas 1990, writ denied) ("[T]he existence of an agency relationship can be a question of law to be determined by the agreement between, and the words and conduct of, the parties."). "An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007).

The critical element of agency is the principal's right to control the agent's actions. *See Novamerican Steel, Inc. v. Delta Brands, Inc.*, 231 S.W.3d 499, 511 (Tex. App.—Dallas 2007, no pet.) (citing *Schott Glas v. Adame*, 178 S.W.3d 307, 315 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). To analyze a party's agency theory, we apply the "the right to control" test. *Seaway Prods. Pipeline Co. v. Hanley*, 153 S.W.3d 643, 652 n.10 (Tex. App.—Fort Worth 2004, no pet.); *Royal Mortg. Corp. v. Montague*, 41 S.W.3d 721, 733 (Tex. App.—Fort Worth 2001, no pet.). Under this test, we must examine whether the alleged principal had the right to determine the details of the alleged agent's work. *See Royal Mortg. Corp.*, 41 S.W.3d at 733. In an agency relationship, "the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist." *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 829 (Tex. App.—Dallas 2010, no pet.).

It is the extent of the principal's control over the details of accomplishing the assigned task that primarily distinguishes the status of independent contractor from agent. *See Seaway Prods. Pipeline*, 153 S.W.3d at 652 n.10. That is to say, where one has the right to control the end sought to be accomplished but not the means and details of the accomplishment—that is, only what shall be done, not how it shall be done—the person employed acts as an independent contractor and not as an agent. *Daily Int'l Sales Corp. v. Eastman Whipstock, Inc.*, 662 S.W.2d 60, 63–64 (Tex. App.—Houston [1st Dist.] 1983, no writ). "Thus, even though one may act for and in behalf of another, if he is not under that other person's control, the relation of agency does not exist." *Id.* at 64 (citing *Stanford v. Dairy Queen Prods. of Tex.*, 623 S.W.2d 797, 801 (Tex. App.—Austin 1981, writ ref'd n.r.e.)). Further, "[t]he mere fact that one

9

subjectively trusts another does not, alone, indicate that confidence is placed in another in the sense of a fiduciary duty." *In re Estate of Kuykendall*, 206 S.W.3d 766, 771 (Tex. App.—Texarkana 2006, no pet.).

Analysis

In support of appellee's motion for summary judgment, Pohl testified by deposition that he represented the owner of the Shoal Creek property and that Maida "was acting on his own behalf." He explained that he did discuss with Maida MD's criteria for new investment property and responded to those criteria with properties or projects on which Pohl was currently working that might be a good fit for MD. Pohl emphasized that he was working with the seller on the sale of the Shoal Creek property before he and Maida discussed MD's purchase criteria. In his affidavit, Pohl again emphasized his role:

> At all times during the course of the transaction relating to the [Shoal Creek property], I represented Seller. I did not hold myself out as representing anyone other than Seller nor did I tell anyone, including Maida, that I was representing anyone other than seller.

Appellees maintain that Pohl owed no fiduciary duty—and, therefore, could not have breached such a duty—to MD because no principal-agent relationship existed between MD and Pohl.

MD responded to appellees' motion which refuted the formation of an agency relationship between Pohl and Maida with Maida's own affidavit and selected email exchanges between Pohl and Maida, evidence that MD suggests as indicative that Pohl *was* working on behalf of MD. To that, appellees respond by highlighting the first two written offers prepared by Maida that unequivocally identify Tarantino Properties and

Pohl as agent for Tarantino Properties as "represent[ing] Seller only." So, clearly, the parties disagree on whether there was an agreement that Pohl would act on behalf of MD and much of the parties' briefing covers the issues concerning whether Pohl agreed to act and did act on behalf of MD.

However, to determine whether an agency was formed, we must also look at the summary judgment evidence in terms of the critical element of right to control. *See Seaway Prods. Pipeline*, 153 S.W.3d at 652 n.10. When Maida responded to one of Pohl's emails that referenced the asking price of $2.5 million, Maida said the price was "[too] high" and reminded Pohl that Pohl had "said $2,350,000." Maida then asked if Pohl was going to list the property. Pohl then advised Maida that, if he were able to pay $2.35 million, Pohl thought it was "worthy of submitting an offer and beginning a negotiation." By demostrating Maida's recognition of Pohl's autonomy and independent decision-making capacity regarding details of the sales process, these exchanges establish that Maida did not exercise the requisite degree and type of control over the details of Pohl's actions such that it would give rise to an agency relationship between them. *See McAfee, Inc.*, 316 S.W.3d at 829.

We conclude that MD failed to raise sufficient evidence that MD or Maida had a sufficient right to control the details of Pohl's work to raise a fact issue on this element of agency. *See id.* Without the requisite right of control by the alleged principal, there is no agency relationship, and it follows that there can be no fiduciary duty based on the agency relationship.[3] *See Daily Int'l Sales*, 662 S.W.2d at 64. In the absence of a

---

[3] We add that the evidence establishes that Pohl had been working on the sale of the Shoal Creek property before having any contact with MD. While that certainly does not conclusively preclude the possibility of a later-formed agency relationship, when considered with this other evidence, it is persuasive evidence.

fiduciary duty owed by Pohl to MD, MD's cause of action against appellees for breach of fiduciary duty fails. *See Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied) (outlining elements of breach of fiduciary duty, including the existence of fiduciary relationship). We overrule MD's first, second, and third issues regarding the existence of a fiduciary duty based on an agency relationship.[4]

## Real Estate License Act Issues

In its fourth and fifth points of error, MD contends that the trial court erred by granting summary judgment because (1) appellees failed to establish as a matter of law that Tarantino and Tarantino Properties cannot be held liable for Pohl's breach of his fiduciary duty in the absence of evidence that MD paid a commission to Pohl and (2) evidence of the payment of a commission was not required for MD to recover on its pleaded causes of action.

Applicable Law

The parties refer to the chapter of the Texas Occupations Code known as The Real Estate License Act (RELA). *See* TEX. OCC. CODE ANN. §§ 1101.001–.806 (West 2012 & Supp. 2015). It appears that MD's claims against Tarantino Properties and Tarantino as its principal are premised on Tarantino's liability for the conduct of Pohl. *See Sheehan v. Adams*, 320 S.W.3d 890, 900 (Tex. App.—Dallas 2010, no pet.) (citing

---

[4] MD's second and third points of error also address the existence of an agency relationship between Pohl and MD with respect to the Shoal Creek property. In those related issues, MD contends that a previous informal relationship that formed between Pohl and MD does not affect the agency relationship and the fiduciary duty that flows from it with respect to Pohl and MD's interaction regarding the Shoal Creek property. Having found that the evidence establishes that no agency relationship was formed and, therefore, no fiduciary duty arose from that interaction, we need not address the second point of error. Similarly, in its third point of error, MD contends that the summary judgment evidence adequately explains its identification of appellees as seller's representatives in its first two written offers. MD maintains, therefore, that the written offers are "not conclusive in determining the agency" relationship. We have addressed the agency relationship in terms of the element of control and do not pass directly on the impact of MD's identification of parties in its written offers to purchase.

12

TEX. OCC. CODE ANN. § 1101.803 (West Supp. 2015)). Section 1101.803 provides that "[a] licensed broker is liable to the commission, the public, and the broker's clients for any conduct engaged in under this chapter by the broker or by a salesperson associated with or acting for the broker." *See* TEX. OCC. CODE ANN. § 1101.803. Essentially, per Section 1101.803, if Pohl—a real estate salesperson acting under the broker's license of Tarantino Properties—were held liable in his dealings with MD, Tarantino Properties would be vicariously liable with Pohl. *See Va. Oak Venture, LLC v. Fought*, 448 S.W.3d 179, 189 (Tex. App.—Texarkana 2014, no pet.) (citing *Flutobo, Inc. v. Holloway*, 419 S.W.3d 622, 637 (Tex. App.—Houston [14th Dist.] 2013, pet. denied)).

Analysis

The parties' contentions regarding the commission payment, or lack thereof, are somewhat confused and are not especially well-developed by either party. We need not pass on the import of the absence of payment on the issue of vicarious liability under RELA, because we have already concluded that Pohl did not breach a fiduciary duty owed to MD. Because there is no liability on the part of Pohl, there can be no vicarious liability on the part of Tarantino or Tarantino Properties. *See id.* We overrule MD's fourth and fifth points of error.

Conclusion

Having overruled MD's points of error, we affirm the trial court's judgment. *See* TEX. R. APP. P. 43.2(a).

Mackey K. Hancock
Justice

13