**Opinion filed October 21, 2021**



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00250-CV
_____

### DAN DIPPREY ET AL., Appellants

### V.

### DOUBLE DIAMOND, INC. ET AL., Appellees

### On Appeal from the 29th District Court
### Palo Pinto County, Texas
### Trial Court Cause No. C47833

## O P I N I O N

This appeal arises from a bench trial concerning "The Cliffs," a resort property development at Possum Kingdom Lake in Palo Pinto County. Appellants Dan Dipprey, Curtis Priddy, Ken Hill, Ken Hill Investment Group, Inc., Walt Leutwyler, Bryan Harveston, William C. Wageneck, Stanley Jerry Brasher, Cheryl D. Brasher, Ray Lunger, Steven Ware, Chris O. Knox, C. Wayne Parks, Daniel J. Dziuba, Samuel K. Howard, Ruth M. Howard, Byrom J. Smith, III, Malibu L.P., Steve Janicek, Jeffrey Coolidge, Ginger Coolidge, Tony W. Docken, Terry Test, William

E. Walker, II, Steven D. Helling, Douglas M. Boston, Thomas Scheidel, Carol Scheidel, Terry Zenoble, Sarah Zenoble, James R. Peek, and Trimerica Corp. (collectively Appellants) are individuals or entities that own property or an interest in property at the Cliffs Resort, or control entities that own property at the Cliffs Resort. They are also members of The Cliffs Property Owners' Association, Inc. (the POA), a nonprofit Texas Corporation. The POA is also an appellant in this appeal. As noted below, the POA was not an original party to the litigation.

This proceeding started as a suit by some of the Appellants concerning the management of the POA and the development of The Cliffs. They originally brought suit against the developer, Appellee Double Diamond, Inc., as well as entities affiliated with Double Diamond, Inc.: Appellees Double Diamond Management Corp. and Double Diamond Utilities Co. The original Appellants also sued R. Mike Ward, the principal officer of the Double Diamond entities and the president of the POA for several years.

Over time, additional property owners joined the suit as plaintiffs. Appellants also sued additional defendants, who are also Appellees to this appeal. Appellees Cliffs Club Corp., Cliffs Dining Corp., Cliffs Hotel Corp., Cliffs Golf, Inc., and Cliffs Marina, Inc. are other entities affiliated with Double Diamond, Inc. that own or conduct operations at The Cliffs. Appellants also joined Appellee Double Diamond-Delaware, Inc., the parent company and sole shareholder of the Double Diamond entities. Appellants also joined Appellee Randy Gracy as a defendant. Among other things, Gracy is the president of Double Diamond Utilities. He was also the vice president of the POA for several years.

The earlier phases of the litigation concerned the manner in which the votes of the members of the POA were to be tabulated and the way in which the meetings of the board of directors were to be conducted. The earlier litigation spawned two original proceedings and an interlocutory appeal in this court. *See In re Dipprey*,

582 S.W.3d 531 (Tex. App.—Eastland 2018, orig. proceeding); *In re Double Diamond, Inc.*, 582 S.W.3d 535 (Tex. App.—Eastland 2018, orig. proceeding); *Double Diamond, Inc. v. Dipprey*, No. 11-18-00105-CV, 2019 WL 150921 (Tex. App.—Eastland Jan. 10, 2019, no pet.) (mem. op.). During this period, the case focused on the efforts of Appellants to gain control of the POA. From the inception of the POA until a few months before trial, Ward and employees of the POA made up a majority of the board of directors.

Appellants gained control of the POA during the pendency of the underlying proceedings by virtue of securing enough votes to elect a majority of the board of directors of the POA. The POA intervened in the suit approximately four months prior to trial as a plaintiff aligned with Appellants.

The bench trial focused on the following issues: (1) the interpretation of the POA's governing documents; (2) claims for breach of contract against Appellees for alleged overcharges and failure to maintain the resort as required by various contracts; (3) claims for breach of fiduciary duty against Ward, Gracy, and Double Diamond Management; (4) ownership of the water and sewer systems at The Cliffs; (5) access to the amenities at The Cliffs; and (6) Appellants' claims for diminution in value of their properties based upon the manner in which the Double Diamond entities operated the resort. At the conclusion of the bench trial, the trial court entered a take-nothing judgment in favor of Appellees on all claims asserted by Appellants and the POA.

Appellants and the POA bring eleven issues challenging the trial court's rulings and judgment. We note at the outset that Appellants have not challenged the trial court's denial of their claims for diminution in value with respect to the value of their properties. In this regard, a significant portion of the trial focused on these claims. Additionally, in their seventh issue, Appellants and the POA challenge the trial court's denial of their claims to declare the POA's "rights of ownership,

maintenance or operation of the central water and central sewer systems . . . to compel conveyance of those systems to [the POA]." However, Appellants and the POA have withdrawn this issue in a letter to the court dated June 12, 2020. Accordingly, we do not address their seventh issue. With respect to Appellants' and the POA's remaining ten issues, as well as Appellees' cross-issue, we affirm in part, reverse and render in part, and reverse and remand in part.

*Background Facts*

In the 1980s, a limited partnership known as Cliffs Development, Ltd. began developing The Cliffs. Cliffs Development, Ltd. executed a "Declaration of Covenants, Conditions, and Reservations for The Cliffs" on August 20, 1986. The original declarations addressed the creation of "The Cliffs Homeowners Association, Inc." However, the POA was not created at that time.

Double Diamond Inc. purchased The Cliffs in 1993 after Cliffs Development, Ltd. experienced financial difficulties. Ward filed Articles of Incorporation for the POA on January 18, 1994. On behalf of Double Diamond Inc., Ward also executed a "Declaration Regarding the Establishment of The Cliffs Property Owners' Association, Inc." on January 18, 1994 (the Declaration). On January 20, 1994, Ward and the other initial directors of the POA executed bylaws for the POA.

On January 25, 1994, Double Diamond Inc. executed an amended Declaration of Covenants, Conditions and Restrictions, which amended the previous Declaration of Covenants, Conditions and Restrictions filed by Cliffs Development, Ltd. Between January 26, 1994, and May 31, 2011, Double Diamond Inc. filed additional amendments to the Declaration of Covenants, Conditions, and Reservations, with the final amendment being the Fourteenth Amended and Restated Declaration of Covenants, Conditions, and Restrictions for The Cliffs filed on May 31, 2011 (the Fourteenth Amended CCRs).

In January 1994, the POA executed a contract with Double Diamond Inc. to maintain the golf course at The Cliffs and in February 1994, the POA executed a separate contract with Double Diamond Inc. to manage certain affairs for the POA and to maintain the common areas and amenities at The Cliffs. Double Diamond Inc. later assigned the maintenance contracts to Double Diamond Management.

As noted previously, Appellants became dissatisfied with the manner in which Ward and the Double Diamond entities operated The Cliffs and managed the POA. Among other things, Appellants and the POA asserted that Appellees operated the water and sewer systems at The Cliffs in a deficient manner. Appellants and the POA also asserted that Appellees overcharged the POA for services at The Cliffs.

*Analysis*

*Vote Tabulation*

In their first issue, Appellants[1] and the POA contend that the trial court erred by determining that each owner of a timeshare estate is entitled to a full vote with respect to the election of directors of the POA. The trial court made this ruling prior to trial,[2] and it confirmed this ruling in its findings of facts and conclusions of law.

In addition to lots held in fee simple, The Cliffs also has some timeshare units that are owned by individuals in one-week increments. Each one-week increment is referred to as a "timeshare estate." The trial court interpreted the POA's governing documents and concluded that each owner of a one-week timeshare estate is entitled to a full vote, the same as the owner of a lot in fee simple. In their first issue, Appellants and the POA challenge this interpretation.

---

[1]Appellees contend that only the POA has standing to present the issue concerning the manner in which votes should be tabulated. Because of the POA's participation in this proceeding and its affiliation with Appellants, it is not necessary for us to consider Appellants' standing apart from the POA's standing.

[2]The trial court's interlocutory ruling on the tabulation of votes was the subject of the mandamus proceeding in *In re Dippery*, 582 S.W.3d 531. We declined to review the trial court's interlocutory ruling on the basis that the parties had an adequate remedy by appeal. 582 S.W.3d at 533.

There are four documents that govern the POA: (1) the Fourteenth Amended CCRs; (2) the Declaration; (3) the articles of incorporation; and (4) the bylaws. Prior to analyzing these documents in detail, we note that the provisions of the Fourteenth Amended CCRs have little to do with membership of the POA and voting for directors. The articles of incorporation also do not address membership and voting to any specific degree. The parties do not rely on the provisions of the articles of incorporation or the Fourteenth Amended CCRs in their briefs on the timeshare voting issue. Accordingly, we focus our analysis on the Declaration and the bylaws.

The interpretation of the governing documents of a homeowners' association is subject to the general rules of contract construction. *C.A.U.S.E. v. Vill. Green Homeowners Ass'n, Inc.*, 531 S.W.3d 268, 274 (Tex. App.—San Antonio 2017, no pet.) (citing *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)); *Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 925 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (same); *Goddard v. Northhampton Homeowners Ass'n, Inc.*, 229 S.W.3d 353, 356 (Tex. App.—Amarillo 2007, no pet.) (same). The court's primary duty is to ascertain the drafter's intent from the instrument's language. *Uptegraph*, 312 S.W.3d at 925 (citing *Bank United v. Greenway Improvement Ass'n*, 6 S.W.3d 705, 707 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)); *see Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 280 (Tex. 2018) (citing *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987)). We review a trial court's interpretation of the governing documents de novo. *Uptegraph*, 312 S.W.3d at 925 (citing *Air Park–Dallas Zoning Comm. v. Crow–Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 909 (Tex. App.—Dallas 2003, no pet.)). Provisions are unambiguous if, after appropriate rules of construction have been applied, they can be given a definite or certain legal meaning. *Id.* Mere disagreement over the interpretation of provisions does not necessarily render them ambiguous. *Id.* at 926.

We begin and end our analysis by examining the Declaration. We start with the Declaration because the bylaws contain a provision indicating that the Declaration will control in the event it conflicts with the bylaws. The "Declarant," and thereby the drafter of the Declaration, was Double Diamond, Inc. in its capacity as the developer. Ward signed the Declaration in his capacity as the president of Double Diamond, Inc.

The Declaration is a three-page document consisting of four articles. The fourth article provides as follows:

<u>VOTING RIGHTS</u>

The Association shall have one class of voting membership. Members shall be entitled to one (1) vote for each Lot or Timeshare Estate in which they hold the interest required for membership. When more than one person holds such interest or interests in any Lot or Timeshare Estate, all such persons shall be Members, and the vote for such Lot shall be exercised as they, among themselves, may determine, but in no event shall more than one (1) vote be cast with respect to any such Lot.

Appellants and the POA focus on the last clause of this provision: "but in no event shall more than one (1) vote be cast with respect to any such Lot." They contend that this provision sets a maximum of one vote per lot. Thus, under the interpretation advanced by Appellants and the POA, the timeshare estate owners of a timeshare unit located on a single lot would only have a fractional vote. For example, if there were fifty timeshare estates in one timeshare unit, the owners of those fifty timeshare estates would have to caucus to determine how to cast a single vote for the lot upon which their timeshare estates are located.

Conversely, Appellees point out that the voting rights provision in the Declaration begins by stating that there is one class of voting membership and that "Members shall be entitled to one (1) vote for each Lot or Timeshare Estate in which they hold the interest required for membership." They contend that this provision is

supported by the definitions in the Declaration. The first article of the Declaration contains definitions of various terms used in the voting rights provision:

> Section 6.    "Lot" shall mean and refer to any plot or tract of land shown upon any recorded subdivision map(s) or plat(s) of the Property, as amended from time to time, which is designated as a "lot" thereon.
>
> . . . .
>
> Section 8.    "Owner" shall mean and refer to each and every person or entity who is a record owner of a fee or undivided fee interest in any Lot or Timeshare Estate; however, the word "Owner" shall not include person(s) or entity(ies) who hold a bona fide lien or interest in a Lot merely as security for the performance of an obligation.
>
> . . . .
>
> Section 11.    "Timeshare Estate" shall mean any undivided freehold estate in a timeshare unit located on a lot as described in a recorded Declaration establishing a Timeshare Regime under the terms of the Texas Timeshare Act.[3]

Appellees assert that the Declaration's definition of "Owner" includes owners of timeshare estates as well as owners of lots. Appellees also point to another provision of the Declaration providing that "[e]very person or entity who is now or hereafter becomes an Owner shall automatically be and must remain a Member of the Association." Reading these provisions together, Appellees contend that, since owners of timeshare estates are Owners, they are also Members, and as such, they are entitled to one vote per timeshare estate owned.

We conclude that the vote tabulation dispute hinges upon the meaning of the final clause in the Declaration's voting rights provision: "but in no event shall more than one (1) vote be cast with respect to any such Lot." As noted previously, Appellants and the POA assert that this provision caps the votes that may be cast per

---

[3]"Timeshare estate" is defined as follows by the Texas Timeshare Act: "an arrangement under which the purchaser receives a right to occupy a timeshare property and an estate interest in the real property." TEX. PROP. CODE ANN. § 221.002(24) (West 2014).

lot to only one, including a lot that has multiple timeshare estates in a timeshare unit located on the lot. Appellants and the POA contend that this reading is more equitable in the sense that a person who only owns a timeshare estate that is one week in duration should not have the same vote as a person that owns a lot in fee simple.

Conversely, Appellees assert that the "one vote per lot" clause is limited by the words at the beginning of the sentence in which it is contained: "When more than one person holds such interest or interests in any Lot or Timeshare Estate, . . . ." Thus, Appellees assert that the "one vote per lot" clause only applies when multiple people own a lot or a timeshare estate, to the extent that only one vote may be cast per lot or timeshare estate. Appellees further assert that the construction advocated by Appellants and the POA would render other provisions of the voting rights provision meaningless. We agree with Appellees.

With respect to the equitable argument advanced by Appellants and the POA, our primary concern in construing an instrument is to give effect to the written expression of the drafter's intent as written in the instrument as opposed to trying to determine the most equitable resolution.[4] *See Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021) (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994)); *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)). We avoid construing a document in a way that renders parts of its language meaningless. *See Sundown Energy LP*, 622 S.W.3d at 888 (citing *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 747 (Tex. 2020)). If we were to adopt the

---

[4]Appellants and the POA assert in their reply brief that Appellees' interpretation would produce an "absurd result" that is "just beyond reason." We disagree based upon our interpretation of the voting rights provision of the Declaration.

construction advanced by Appellants and the POA, the earlier part of the voting rights provision stating that each owner of a timeshare estate is entitled to one vote would be rendered meaningless.

We agree with Appellees' contention that the one vote per lot clause is limited by the words at the beginning of the sentence:

> When more than one person holds such interest or interests in any Lot or Timeshare Estate, all such persons shall be Members, and the vote for such Lot shall be exercised as they, among themselves, may determine, but in no event shall more than one (1) vote be cast with respect to any such Lot.

By its express terms, the sentence applies to situations where multiple persons own a single lot or multiple persons own a single timeshare estate. In those instances, only one vote may be cast. But under the construction advanced by Appellants and the POA, the one vote per lot clause would apply to instances where a timeshare estate is solely owned by one person.

Appellees additionally assert that the Declaration treats a "Timeshare Estate" as being different than a "Lot." In this regard, courts "cannot interpret a contract to ignore clearly defined terms." *Id.* (quoting *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 64 (Tex. 2014)). The Declaration has separate definitions for a "Lot" and a "Timeshare Estate." The trial court interpreted the one vote per lot clause as only applying to votes cast on behalf of Lots but not on behalf of Timeshare Estates. In light of the separate definitions for each term, this construction is correct.[5]

---

[5]Appellants and the POA also rely on a HUD report prepared by Double Diamond, Inc. in 2014 wherein it stated that each lot has one vote, including lots owned by Double Diamond, Inc. that have timeshare units. Appellants and the POA contend that this is a "pre-dispute" interpretation of the Declaration that should be binding on Appellees. We disagree. As noted above, "Lot" and "Timeshare Estate" are treated differently by the POA's governing documents. Additionally, the interpretation of the Declaration is resolved by construing its express language rather than a document prepared approximately thirty years later.

The bylaws contain a voting rights provision that is similar to the voting rights provision in the declaration. The "voting rights" provision in the bylaws states as follows:

Voting Rights

The Association shall have one class of voting membership. Members shall be entitled to one (1) vote for each Lot or Timeshare Estate in which they hold the interest required for membership. When more than one person holds such interest or interests in any Lot or timeshare estate, all such persons shall be Members, and the vote for such Lot *or Timeshare Estate* shall be exercised as they, among themselves, may determine, but in no event shall more than one (1) vote be cast with respect to any such Lot *or Timeshare Estate*.

(Emphasis added). We note that the two instances of the phrase "or Timeshare Estate" in the voting rights provision in the bylaws that we have italicized above are not present in the voting rights provision of the Declaration. We are mindful that these two additions of "or Timeshare Estate" in the bylaws make its voting rights provision easier to construe in favor of Appellees' construction of the Declaration. However, the omission of these two later uses of "Timeshare Estate" in the Declaration does not require the opposite construction. To do so would render the Declaration's use of the following words meaningless: "*Members shall be entitled to one (1) vote for each* Lot or *Timeshare Estate* in which they hold the interest required for membership.*" (Emphasis added). We overrule Appellants' and the POA's first issue.

*Development Period*

In their second issue, Appellants and the POA assert that the trial court erred by not entering a ruling on their request for a declaration that the development period for The Cliffs has ended. This issue bears on Double Diamond, Inc.'s power to unilaterally amend the CCRs as well as the other governing documents of the POA. Specifically, there is a provision in the Fourteenth Amended CCRs that provides that

11

"[t]he power to amend the Covenants and Restrictions is retained by the Developer." The trial court entered a conclusion of law to the effect that the requested declaratory relief was "not ripe for adjudication." The trial court noted in the conclusion that no attempt had been made to amend the CCRs since May 2011.

Ripeness is a component of a court's subject-matter jurisdiction. *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). In order for a court to have subject-matter jurisdiction, the plaintiff must have standing to sue, and the plaintiff's claim must be ripe. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020). The doctrines of standing and ripeness stem from the prohibition of advisory opinions, which in turn is rooted in the separation of powers doctrine. *Patterson*, 971 S.W.2d at 442. Subject-matter jurisdiction is a question of law reviewed de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 446).

Ripeness examines when an action may be brought, while standing focuses on who may bring an action. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000); *Landmark Am. Ins. Co. v. Eagle Supply & Mfg. L.P.*, 530 S.W.3d 761, 767 (Tex. App.—Eastland 2017, no pet.). Ripeness "emphasizes the need for a concrete injury for a justiciable claim to be presented." *Lynch*, 595 S.W.3d at 683 (quoting *Patterson*, 971 S.W.2d at 442). If the plaintiff's claimed injury is based on "hypothetical facts, or upon events that have not yet come to pass," then the case is not ripe, and the court lacks subject-matter jurisdiction. *Id.* (quoting *Gibson*, 22 S.W.3d at 852).

The Uniform Declaratory Judgments Act (UDJA) states that "[a] person interested under a . . . contract . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status,

or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2020). The Act further provides that "[a] contract may be construed either before or after there has been a breach." *Id.* § 37.004(b). However, a plaintiff bringing suit under the UDJA must still properly invoke the trial court's subject-matter jurisdiction. *Lynch*, 595 S.W.3d at 683 (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 444). The UDJA does not permit courts to render advisory opinions, *Tex. Ass'n of Bus.*, 852 S.W.2d at 444, and it does not authorize a court to decide a case in which the issues are hypothetical or contingent—the dispute must still involve an actual controversy. *Lynch*, 595 S.W.3d at 684.

In determining whether a suit for a declaratory judgment presents a court with a ripe controversy, "the declaration sought must actually resolve the controversy." *Id.* at 685 (quoting *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex. 2004)). *Lynch* concerned a dispute over the scope of easements granted in 1949. *Id.* The defendant asserted that the plaintiffs only alleged "a hypothetical future controversy." *Id.* at 684. The Texas Supreme Court disagreed by holding that the dispute was "not merely academic or theoretical," but rather was a "real and substantial controversy . . . involving genuine conflict of tangible interests." *Id.* at 685–86.

There is a current dispute between the parties as to whether the development period for The Cliffs has ended. As noted previously, the dispute bears on Double Diamond, Inc.'s power to unilaterally amend the CCRs. Appellants and the POA assert that, because of a statutory change in the Texas Residential Property Owners Protection Act, Double Diamond, Inc. cannot unilaterally amend the CCRs because The Cliffs are no longer in the development period. *See* PROP. § 209.0041(h) (West Supp. 2020). Conversely, Ward testified at a pretrial hearing that "I think the development period is alive and well right now and will continue for a long time." On appeal, Appellees assert that "whether [Double Diamond, Inc.] will ever attempt

to unilaterally exercise those rights is hypothetical and contingent." Appellees further assert that the trial court had discretion to decline to issue the requested relief under the UDJA. *See* CIV. PRAC. § 37.008.

We disagree with Appellees' contention that the trial court had discretion to decline to address the merits of Appellants' and the POA's request for declaratory relief. Section 37.008 provides that "[t]he court may refuse to render or enter a declaratory judgment or decree if the judgment or decree would not terminate the uncertainty or controversy giving rise to the proceeding." This statute only provides a trial court with "limited discretion to refuse a declaratory judgment, and [it] may do so only where judgment would not remove the uncertainty giving rise to the proceedings." *Scurlock Permian Corp. v. Brazos Cty.*, 869 S.W.2d 478, 486 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (citing *James v. Hitchcock Indep. Sch. Dist.*, 742 S.W.2d 701, 704 (Tex. App.—Houston [1st Dist.] 1987, writ denied)). Section 37.008 is inapplicable because a declaratory judgment *would* terminate the controversy in this case—whether the development period remains in existence.

We also disagree with Appellees' assertion that the development period dispute is not ripe for adjudication because Double Diamond, Inc. has not attempted to unilaterally amend the CCRs since 2011. This lawsuit started as an action by disgruntled members of the POA concerning the manner in which Appellees governed the POA. The dispute between the parties concerning the development period is not merely academic or theoretical, but rather it is an actual controversy. Furthermore, a declaratory judgment with respect to the development period will resolve their actual controversy and will promote judicial economy. Accordingly, we disagree with the trial court's determination that the development period dispute is not ripe for adjudication.

There are two provisions in the Property Code that are relevant to the issue concerning the development period. In order to resolve this issue, we must construe

these provisions. We review issues of statutory construction de novo. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). In construing statutes, our primary objective is to give effect to the legislature's intent. *Id.* In interpreting statutes, we must look to the plain language, construing the text in light of the statute as a whole, because a statute's plain language is the most reliable guide to the legislature's intent. *Id.*

Section 209.0041(h) provides that a declaration[6] of a property owners' association may be amended only by a vote of sixty-seven percent of the total votes allocated to property owners entitled to vote. Section 209.0041 applies to a residential subdivision in which property owners are subject to mandatory membership in a property owners' association. PROP. § 209.0041(b). But under subsection (d), Section 209.0041 does not apply "to the amendment of a declaration during a development period." *Id.* § 209.0041(d). "Development period" is defined by statute as follows:

> (4-a) "Development period" means a period stated in a declaration during which a declarant reserves:
>
> (A) a right to facilitate the development, construction, and marketing of the subdivision; or
>
> (B) a right to direct the size, shape, and composition of the subdivision.

*Id.* § 209.002(4-a). Thus, we must determine if The Cliffs are still in the development period. We conclude that it is not.

We first note that the CCRs do not specifically provide for a development period. Appellees contend that The Cliffs remains in the development period because the Fourteenth Amended CCRs provides that "[t]he power to amend the

---

[6]By definition, a "declaration" "means an instrument filed in the real property records of a county that includes restrictive covenants governing a residential subdivision." PROP. § 209.002(3).

Covenants and Restrictions is retained by the Developer." Appellees further assert that this is a right that has existed since the adoption of the Fifth Amended CCRs in March 1998 by the POA.

The Second Amended CCRs was the first set of CCRs adopted by Double Diamond, Inc. after its acquisition of The Cliffs. As noted in the Third Amended CCRs, the Second Amended CCRs granted the power to amend the CCRs to the POA's board of directors. Thereafter, the POA executed the Third, Fourth, and Fifth Amended CCRs. Double Diamond, Inc. then executed the Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, and Fourteenth Amended CCRs.

The definition of a "development period" indicates that it is a right reserved by the developer. *Id.* § 209.002(4-a). Despite the text of the Fifth through the Fourteenth Amended CCRs that "[t]he power to amend the Covenants and Restrictions is *retained* by the Developer" (emphasis added), history indicates otherwise. While the power to amend was initially reserved by Double Diamond, Inc., it subsequently conveyed the right to amend to the POA. Accordingly, The Cliffs is no longer in the development period as the term is defined in the Property Code because the power to amend was no longer reserved by the developer after it conveyed that power to the POA. Moreover, this interpretation is supported by the fact that The Cliffs have been in existence for over thirty years. Thus, Section 209.0041 is applicable to The Cliffs.

Because of its determination that the existence of the development period was not ripe for adjudication, the trial court did not consider the effect of Section 209.0041 on Double Diamond, Inc.'s power to unilaterally amend the CCRs or its effect on the other governing documents for the POA. We conclude that a remand is necessary for the trial court to consider the effect of Section 209.0041. We sustain Appellants' and the POA's second issue. We render judgment that The Cliffs are no longer in the development period. We remand all issues concerning

16

the effect of Section 209.0041 on the CCRs and the other governing documents of the POA for consideration by the trial court.

*Attorney's Fees*

In their ninth issue, Appellants and the POA assert, conditionally to their first and second issues, that the trial court abused its discretion by not awarding attorney's fees for their requests for declaratory relief. The UDJA provides for an award of "reasonable and necessary attorney's fees as are equitable and just." Civ. Prac. § 37.009. "[The] UDJA does not require an award of attorney's fees to anyone; rather, it 'entrusts attorney fee awards to the trial court's sound discretion.'" *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 271 (Tex. 2021) (quoting *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)).

Appellants and the POA have not provided any argument in support of this issue. A brief must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). "Failure to cite legal authority or to provide substantive analysis of the legal issues presented results in waiver of the complaint." *Smale v. Williams*, 590 S.W.3d 633, 639 (Tex. App.—Texarkana 2019, no pet.). Accordingly, Appellants and the POA have waived this issue. We overrule their ninth issue.

*Fiduciary Duty of Double Diamond Management*
*and Double Diamond, Inc.*

In their third issue, Appellants and the POA assert that the trial court erred by granting summary judgment to the effect that Double Diamond Management did not owe a fiduciary duty to the POA. As the third issue is worded, Appellants and the POA appear to be presenting a procedural complaint—that the trial court erred by granting summary judgment "moments before calling the cause to trial" by holding

17

that Double Diamond Management owed no fiduciary obligations to the POA.[7] However, they have not cited any authority and we have found none that supports the proposition that a trial court errs by granting summary judgment on the morning of trial.

We additionally note that, as worded, the third issue only references Double Diamond Management. In this regard, the trial court's oral grant of summary judgment on the morning of trial only referenced Double Diamond Management. However, the trial court also noted that if "[Double Diamond Management] doesn't have a fiduciary duty under the Service Agreement, neither would [Double Diamond, Inc.] under that theory." We agree with the trial court that Double Diamond, Inc. and Double Diamond Management are similarly situated because Double Diamond Management is the successor to Double Diamond, Inc. under the parties' service agreement.

We further note that in their fourth issue, Appellants and the POA also challenge the trial court's determination that neither Double Diamond Management nor Double Diamond, Inc. owed a fiduciary duty to the POA. They also assert in their fourth issue that the trial court erred by determining that Double Diamond Management and Double Diamond, Inc. did not breach any fiduciary duties. Appellants and the POA challenge several findings of fact and conclusions of law with respect to these claims.

Appellants and the POA argue their third and fourth issues together with respect to whether Double Diamond, Inc., and Double Diamond Management owed a fiduciary duty. In doing so, they only cite evidence offered at trial rather than the

---

[7]The third issue states as follows: "The trial court erred in granting summary judgment moments before calling the cause to trial and holding that Defendant Double Diamond Management Company (DDM) owed no fiduciary obligations to the Association, including, but not limited to, that DDM had no duty to account to the Association for how it handled Association money. (The summary judgment is in error as a matter of law, and there were material issues of disputed fact.)"

summary judgment evidence. Because of their overlap, we will address the third and fourth issues together.

The trial court found that Double Diamond, Inc., and then Double Diamond Management, acted as a property management company for The Cliffs. They did so pursuant to a written service agreement wherein Double Diamond, Inc., and then Double Diamond Management, agreed to provide the POA with various services, including accounting and financial services. Appellants' and the POA's claims for breach of fiduciary duty against Double Diamond, Inc. and Double Diamond Management are based on the primary contention that Double Diamond, Inc. and Double Diamond Management overcharged the members of the POA for their services. Appellants and the POA asserted that, as fiduciaries, Double Diamond, Inc. and Double Diamond Management had the burden of proof to account for their use of POA money. Appellants and the POA assert that Double Diamond, Inc. and Double Diamond Management failed to meet their burden of proof to account for expenditures.

Lying at the heart of Appellants' and the POA's issues is the question of who has the burden of proof on the claims that the members of the POA were overcharged. By asserting that Double Diamond, Inc. and Double Diamond Management had the burden of proof as fiduciaries, Appellants and the POA sought to shift the burden to Double Diamond, Inc. and Double Diamond Management to prove that they did not overcharge the members.

In discovery, Appellees provided Appellants and the POA with "detail trial balances," which essentially was the general ledger for the POA. Appellants and the POA were dissatisfied with the production of the detail trial balances as a justification of the expenses assessed to the POA's members. They sought the source documents that supported the entries on the detail trial balances. Appellants and the POA complain that Appellees only provided the source documents in a

"document dump" in the form of giving them access to at least "176 banker boxes" containing the documents of the POA commingled with records of entities that are unrelated to The Cliffs. Appellants and the POA assert that the document production was at best an "Easter Egg Hunt."

The trial court noted that the task of matching up the source documents to the detail trial balances would be a "monumental task." The trial court further noted at trial that no one had undertaken that monumental task. Appellants and the POA asserted that Double Diamond Management and Double Diamond, Inc. should have completed this monumental task in order to justify its management of the finances of the POA, and they relied on their claim for breach of fiduciary duty to support their argument. We conclude that the trial court did not err in ruling that Double Diamond Management and Double Diamond, Inc. did not owe the POA a fiduciary duty.

To succeed on a claim for breach of fiduciary duty, a plaintiff must establish "(1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach." *Severs v. Mira Vista Homeowners Ass'n, Inc.*, 559 S.W.3d 684, 703 (Tex. App.—Fort Worth 2018, pet. denied) (quoting *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.)); *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *accord Flagstar Bank, FSB v. Walker*, 451 S.W.3d 490, 499 (Tex. App.—Dallas 2014, no pet.). "Certain formal relationships create fiduciary relationships as a matter of law." *Severs*, 559 S.W.3d at 703. Examples of formal fiduciary relationships include attorney–client, partnership, and trust relationships. *See Crim Truck & Tractor v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002).

Sometimes informal relationships, whether moral, social, domestic, or purely personal, may also give rise to fiduciary duties where one person trusts in and relies on another. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997); *Severs*, 559 S.W.3d at 703. "But not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Swanson*, 959 S.W.2d at 176–77. In order to give full force to contracts, courts do not create fiduciary relationships lightly. *Id.* at 177. Thus, "to impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit." *Id.* "[M]ere subjective trust does not . . . transform arm's-length dealing into a fiduciary relationship." *Id.*

"Where the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (quoting *Nat'l Med. Enters. v. Godbey*, 924 S.W.2d 123, 147 (Tex. 1996)). In this case, the facts concerning the relationship between Double Diamond, Inc., Double Diamond Management, and the POA are undisputed. Appellants and the POA assert that Double Diamond, Inc. and Double Diamond Management owed a fiduciary duty to the POA "because they have collected, held, and disbursed the POA's funds and are tasked with managing and disbursing those funds for the benefit of the POA." Thus, Appellants and the POA do not assert the existence of a confidential relationship existing prior to, and apart from, the service agreement. *See Swanson*, 959 S.W.2d at 177; *Robbins Ranch Subdivision Homeowners' Ass'n v. Partners of Benchmark Props., L.P.*, No. 12-18-00317-CV, 2019 WL 2119659, at *4 (Tex. App.—Tyler May 15, 2019, pet. denied) (holding that a developer of a subdivision did not owe a fiduciary duty to the homeowners' association in the absence of a showing of a special relationship of trust and confidence existing prior to, and apart from, the agreement made the basis of the suit); *see also T.F.W. Mgmt., Inc. v. Westwood*

21

*Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 720 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (declining to recognize fiduciary duty between owner of a country club and property owners' association that paid club fees).

The terms of the service agreement do not specifically provide that Double Diamond, Inc. or Double Diamond Management owe a fiduciary duty to the POA. *See Lindley*, 349 S.W.3d at 124 ("Fiduciary duties . . . may be created by contract" (quoting *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 698 (Tex. App. —Fort Worth 2006, pet. denied))); *see also Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 727 (5th Cir. 2015) (an example of a fiduciary duty created by contract). The service agreement simply provided that Double Diamond, Inc., and then Double Diamond Management, would provide various services to the POA, including accounting and financial services.

Appellants and the POA assert that "since 2007 [Double Diamond Management] completely controlled the Association's money." Based on this assertion, Appellants and the POA assert that Double Diamond Management owed a fiduciary duty to the POA. Appellants and the POA cite several cases in support of this proposition. We find them distinguishable.

Appellants and the POA cite *City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex. 1969), for the proposition that when one controls or manages the money of another, a fiduciary relationship is created. As noted by the Dallas Court of Appeals in *Flagstar Bank*:

> *Pippen* involved an action by the city against its land agent, title company and the title company's vice-president to recover funds converted by the land agent to his own use. The city's land agent duped the city into authorizing the purchase of property for an amount greater than had been actually negotiated with the sellers. The city sent these greater amounts to the title company with instructions to pay those amounts to the sellers. Instead, contrary to the instructions, the title company paid the sellers a lesser amount and paid the difference to the land agent.

22

451 S.W.3d at 502 (footnotes omitted) (citing *Pippen*, 439 S.W.2d at 662, 664–65). The court in *Flagstar Bank* noted that "*Pippen* was decided on an agency theory; it was not a breach of fiduciary duty case." *Id.* at 503 (citing *Wessen v. Jefferson Sav. & Loan Ass'n*, 641 S.W.2d 903, 906 (Tex. 1982) (stating *Pippen* decided on theory that agent owes fiduciary duty to principal)).

Appellants and the POA did not plead or establish an agency theory against Double Diamond, Inc. or Double Diamond Management. Agency is a type of special relationship that gives rise to a formal fiduciary duty. *Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 60 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002)). An agency relationship arises when the principal consents to the agent acting on the principal's behalf. *Id.* (citing *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549 (Tex. App.—Houston [14th Dist.] 2003, no pet.)). An essential element of the principal–agent relationship is the alleged principal's right to control the actions of the alleged agent. *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993). This right to control includes not only the right to assign tasks, but also the right to dictate the means and details of the process by which an agent will accomplish the task. *Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 413 (Tex. App.—Dallas 2008, no pet.). The evidence does not establish that the POA had the right to control either Double Diamond, Inc. or Double Diamond Management in any respect. "Thus, even though one acts for and in behalf of another, if he is not under that other person's control, the relation of agency does not exist." *Daily Int'l Sales Corp. v. Eastman Whipstock, Inc.*, 662 S.W.2d 60, 64 (Tex. App.—Houston [1st Dist.] 1983, no writ).

Appellants and the POA also cite *Talamantez v. State*, 790 S.W.2d 33 (Tex. App.—San Antonio 1990, pet. ref'd); *Home Loan Corp. v. Texas American Title Co.*, 191 S.W.3d 728 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); and

*Shearer v. Shearer*, No. 06-12-00096-CV, 2013 WL 3771409 (Tex. App.—Texarkana July 16, 2013, no pet.) (mem. op.). *Talamantez* is a criminal case that cited *Pippen* for the proposition that "an agent who accepts money from a principal to be used for a specific purpose owes a fiduciary duty to the principal." 790 S.W.2d at 35 n.1 (citing *Pippen*, 439 S.W.2d at 665). *Home Loan Corp.* involved a claim against a settlement agent for the closing of a residential mortgage loan. 191 S.W.3d at 730. Citing *Pippen*, the court held that "a title company that accepts funds for disbursement in a closing transaction for a fee owes the party remitting those funds a duty of loyalty, a duty to make full disclosure, and a duty to exercise a high degree of care to conserve the money and pay it only to those persons who are entitled to receive it." *Id.* (citing *Pippen*, 439 S.W.2d at 664–65). The court in *Shearer* cited *Pippen* for the proposition that "[g]enerally, an agent is obligated to exercise a high degree of care to conserve the principal's money and to pay it only to those entitled to receive it." 2013 WL 3771409, at *8 (citing *Pippen*, 439 S.W.2d at 665). For the same reasons that *Pippen* does not apply, *Talamantez*, *Home Loan Corp.*, and *Shearer* are also inapposite.

Appellants and the POA also cite *Paschal v. Great Western Drilling, Ltd.*, 215 S.W.3d 437 (Tex. App.—Eastland 2006, pet denied), in support of their claim that Double Diamond, Inc. and Double Diamond Management owed a fiduciary duty to the POA. *Paschal* involved an accountant for an oil company that stole almost $1,500,000 from the company by diverting the payment of revenue to a fictious payee. *Id.* at 442. The trial court submitted an issue to the jury as to whether a fiduciary relationship existed between the accountant and the oil company that employed him. *Id.* at 450. On appeal, the accountant's widow asserted that the fiduciary duty question should not have been submitted to the jury. *Id.* We held that the oil company was entitled to the submission of an issue on the existence of a fiduciary duty because of the "peculiar confidence" entrusted to the accountant by

24

the oil company. *Id.* at 451 (citing *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 160 S.W.2d 509, 512 (Tex. 1942)). We noted that the oil company assigned him the responsibility to distribute millions of dollars of revenue to the appropriate recipient. *Id.*

*Paschal* is distinguishable both procedurally and factually. The appellate complaint in *Paschal* concerned the existence of evidence to support the submission of a jury issue. The appellant in *Paschal* did not challenge the jury's answer to the question. Factually, the accountant in *Paschal* was an employee in charge of disbursing revenue received by the oil company to the various working interest and royalty interest owners who owned interests in the leases that the oil company operated. *Id.* "It is well established in Texas that an employee may be in a fiduciary relationship with his or her employer." *Orbison v. Ma-Tex Rope Co.*, 553 S.W.3d 17, 30 (Tex. App.—Texarkana 2018, pet. denied) (citing *Kinzbach Tool*, 160 S.W.2d at 513); *see Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700 (Tex. 2007) (noting that an agency relationship imposes certain fiduciary duties and that an employer–employee relationship is such an agency relationship). As we noted, there was at least a fact question in *Paschal* as to whether the accountant occupied a position of peculiar confidence to pay millions of dollars to the appropriate recipients. 215 S.W.3d at 451. The accountant was the only person that examined the checks at the oil company before they were mailed to the recipients. *Id.*

Appellants and the POA also rely on a statement in *Lincoln General* that "control over funds belonging to others is the classic situation in which a fiduciary duty arises." 787 F.3d at 728. *Lincoln General* involved a contract that specifically provided that an agent would have a fiduciary duty. *Id.* at 727. Thus, the agent had a fiduciary duty in its actions dealing with another party's money. *Id.* at 728. The court in *Lincoln General* cited a U.S. Supreme Court opinion as support for the

above quote. *Id.* (citing *Pegram v. Herdrich*, 530 U.S. 211, 231 (2000)). In addressing the fiduciary duty owed by a trustee, the Supreme Court in *Pegram* stated that "[a]t common law, fiduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries." 530 U.S. at 231. The holdings in *Lincoln General* and *Pegram* are inapposite because Double Diamond, Inc. and Double Diamond Management were not agents or trustees of the POA and did not have a contract with the POA that specified that they were fiduciaries.

We conclude that the trial court did not err in ruling that Double Diamond, Inc. and Double Diamond Management did not owe a fiduciary duty to the POA. "[A] contractual obligation does not generally give rise to a fiduciary duty." *Brewer & Pritchard*, 73 S.W.3d at 203. The POA executed a service agreement with Double Diamond, Inc., and then with Double Diamond Management, to manage the affairs of The Cliffs. The service agreement did not specify a fiduciary relationship, and neither Double Diamond, Inc. nor Double Diamond Management was an agent of the POA because the POA did not have the right to control them.

A no-evidence summary judgment is proper when a claim fails as a matter of law. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). We conclude that a trial court does not err by resolving a claim that fails as matter of law by granting a summary judgment on the eve of trial, particularly in the setting of a bench trial. On the merits, that trial court did not err by ruling that Double Diamond, Inc. and Double Diamond Management did not owe a fiduciary duty to the POA as a matter of law. The evidence offered at trial did not change this conclusion. We overrule Appellants' and the POA's third and fourth issues.

*Accounting*

In their fifth issue, Appellants and the POA assert that the trial court erred in determining that Appellees had fully accounted to the POA. "An 'accounting' is designed to require a person in possession of financial records to produce them,

demonstrate how money was expended, and return pilfered funds in his or her possession." 1 TEX. JUR. 3d *Accounts and Accounting* § 166. "To be entitled to an accounting, a plaintiff usually must have a contractual or fiduciary relationship with the party from which the plaintiff seeks the accounting." *T.F.W. Mgmt.*, 79 S.W.3d at 717 (citing *Hunt Oil Co. v. Moore*, 656 S.W.2d 634, 642 (Tex. App.—Tyler 1983, writ ref'd n.r.e.)).

As the fifth issue is stated, it appears that Appellants and the POA are challenging the legal and factual sufficiency of the evidence supporting various findings on the amounts charged to the POA. The issue as stated does not indicate under which theory of recovery Appellants and the POA assert a right to an accounting. In their argument, Appellants and the POA assert their claim for an accounting under their claim for breach of fiduciary against Double Diamond, Inc. and Double Diamond Management. They also assert a contractual claim for an accounting. Because we have determined that Double Diamond, Inc. and Double Diamond Management did not owe the POA a fiduciary duty, we limit our discussion of the fifth issue to the contractual claim for an accounting.

Appellants and the POA assert that Double Diamond, Inc. and Double Diamond Management had a duty to account to the POA under the service agreement. They do not cite any specific provision in the service agreement in support of this contention, but rather they assert that it arises generally from the contract because of Double Diamond, Inc.'s and Double Diamond Management's "use of the Association's funds." Thus, in many respects, Appellants' and the POA's claim for an accounting under the service agreement is the same as their fiduciary duty claim against Double Diamond, Inc. and Double Diamond Management—both are based on the control of the POA's funds.

The service agreement does not contain a requirement for Double Diamond, Inc. or Double Diamond Management to make an accounting to the POA. It

27

provides that Double Diamond, Inc., and then Double Diamond Management, would provide accounting and financial services for the POA but it does not contain a requirement that they would provide an after-the-fact accounting to the POA. Courts do not imply a requirement for an accounting when the parties' contract is silent on the matter. *T.F.W. Mgmt.*, 79 S.W.3d at 719.

Moreover, "[a] suit for an accounting is generally founded in equity." *Id.* at 717 (citing *Sw. Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 809 (Tex. App.—San Antonio 1994, writ denied)). An equitable accounting is proper when the facts and accounts presented are so complex that adequate relief may not be obtained at law. *Id.* at 717 (citing *Hutchings v. Chevron U.S.A.*, 862 S.W.2d 752, 762 (Tex. App.—El Paso 1993, writ denied)). As noted in *T.F.W. Management*, "When a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting." *Id.* at 717–18. An order granting an accounting is within the discretion of the trial court. *Dooley*, 884 S.W.2d at 809 (citing *Gifford v. Gabbard*, 305 S.W.2d 668, 672 (Tex. Civ. App.—El Paso 1957, no writ)).

In many respects, Appellants' and the POA's claim for accounting is a discovery dispute. They were dissatisfied with the detail trial balances as evidence of the accuracy of the expenses assessed by Double Diamond Management to the POA and they sought more information in the form of the source documents. The adequacy of a party's discovery responses is a matter within the trial court's discretion. *See In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (citing *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding)). The trial court noted that the task of matching up the source documents to the detail trial balances would be monumental. Appellants and the POA did not want to undertake this task—they wanted Appellees to complete

this task.  The trial court disagreed with Appellants and the POA by holding that, as plaintiffs, they had the burden of proof.  We agree.  *See Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 482 (Tex. 1984) ("It is a well accepted postulate of the common law that a civil litigant who asserts an affirmative claim for relief has the burden to persuade the finder of fact of the existence of each element of his cause of action.").  The record does not reflect that the trial court abused its discretion in its discovery rulings.

The trial court made specific findings that Double Diamond Management accurately tracked goods purchased for The Cliffs as well as the expenses of the POA and that Double Diamond Management presented annual budgets that were approved by the duly elected board of directors.  The trial court also determined that Double Diamond Management properly accounted to the POA.  When reviewing the sufficiency of the evidence to support the trial court's express or implied findings, we apply the same standards of review that apply to a jury's verdict.  *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)).

When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, it "must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue."  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *accord Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).  In reviewing a "matter of law" challenge, we first examine the record for evidence that supports the finding, and we ignore all evidence to the contrary.  *Francis*, 46 S.W.3d at 241 (citing *Sterner*, 767 S.W.2d at 690); *see City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).  If no evidence supports the finding, we then examine the entire record to determine if Appellant's contrary position is established as a matter of law.  *Francis*, 46 S.W.3d at 241.

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it "must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Id.* at 242. "The court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* We do not pass upon the witnesses' credibility or substitute our judgment for that of the trier of fact, even if the evidence would support a different result. *Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006) (per curiam).

Appellants and the POA do not assert that they conclusively established their claims regarding overcharges as a matter of law. Instead, they assert that there was "no evidence" to support the trial court's findings about the appropriateness of the charges assessed to the POA. A "no evidence" challenge would be a legal sufficiency challenge asserted by a party that did not have the burden of proof. *See City of Keller*, 168 S.W.3d at 827; *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). As noted previously, Appellants and the POA had the burden of proof on this issue.

The trial court received extensive testimony from Double Diamond Management's Chief Financial Officer, Rick De La Fuente, regarding the manner in which the detail trial balances were prepared as well as the preparation of the financial statements for the POA. He testified that if an expense was placed on the detail trial balances, then it was an expense of the POA. De La Fuente testified that he believed that the entries on the detail trial balances were accurate. In many respects, the accuracy of the detail trial balances was inherently a matter of credibility. The trial court determined that Appellees' detail trial balances were credible evidence of the actual expenses of the POA. In a bench trial, we defer to

the credibility determinations of the trial court. *See S-G Owners Ass'n, Inc. v. Sifuentes*, 562 S.W.3d 614, 620 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

There were instances when monies were directed from the POA's account to unrelated entities controlled by Double Diamond, Inc. However, these amounts were later paid back to the POA. There was also an instance where the trial court essentially assigned De La Fuente some "homework" to explain a discrepancy noted by Appellants' and the POA's expert. Both the trial court and the expert were satisfied with De La Fuente's later explanation.

At trial, Appellants and the POA contested De La Fuente's act of transferring $1.725 million from the POA's account to Double Diamond, Inc. in January and February 2018. These transfers occurred prior to Appellants taking control of the POA. De La Fuente testified that he transferred this amount because the financial records of the POA indicated that Double Diamond, Inc. had made advances to the POA that had not been paid back. During closing argument, Appellants and the POA asserted that there was insufficient evidence that this indebtedness of the POA continued to exist at the time the transfers were made. On appeal, Appellants and the POA assert that the advances violated the statute of frauds.[8]

De La Fuente testified that these advances had been continuously carried on the books of the POA. In this regard, Ward testified that Double Diamond, Inc. advanced funds to the POA at the start of Double Diamond, Inc.'s involvement with The Cliffs because the POA was unable to maintain the golf course at the start. These advances were carried on the books rather than paid back earlier to keep the maintenance fees assessed to the members of the POA low. Ward testified that Double Diamond, Inc. extended credit to the POA at no interest. Furthermore, Ward

---

[8]The statute of frauds is an affirmative defense that must be raised in the trial court in order to preserve error on appeal. *See Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013). The trial court permitted Appellants and the POA to file a trial amendment to assert the statute of frauds.

testified that the finances of the POA were discussed at every annual meeting of the members, including the existence of the POA's indebtedness to the Double Diamond entities.

The statute of frauds requires a written agreement or memorandum to be complete within itself in every material detail and to contain all of the essential elements of the agreement so that the contract can be ascertained from the writings without resort to oral testimony. *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978). "The statute of frauds does not require that the contract itself be in writing. Instead, the written instrument merely furnishes written evidence of a contract and its essential terms." *Maginn v. Norwest Mortg., Inc.*, 919 S.W.2d 164, 167 (Tex. App.—Austin 1996, no writ) (citing *EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263, 267 (Tex. App.—Corpus Christi 1994, writ denied)). The financial statements and detail trial balances of the POA constituted sufficient written memoranda of the advances made by Double Diamond, Inc. to the POA.

As we have said, the trial court correctly determined that Double Diamond, Inc. and Double Diamond Management did not owe a fiduciary duty to the POA. Furthermore, the POA did not have a contractual right to an accounting under the service agreement. The trial court noted that the POA contemporaneously approved the actions taken by Double Diamond, Inc. and Double Diamond Management under the service agreement. It was only after Appellants gained control of the POA that the POA sought to question what it had previously approved. The trial court's determination that Double Diamond Management properly accounted to the POA on a contemporaneous basis is a credibility determination that is supported by the evidence. We overrule Appellant's fifth issue.

*Fiduciary Duty of Ward and Gracy*

In their sixth issue, Appellants and the POA assert that the trial court erred by determining that Ward and Gracy did not breach their fiduciary duties as officers

32

and directors of the POA. *See Ritchie v. Rupe*, 443 S.W.3d 856, 868–69 (Tex. 2014) (citing *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963)) (corporate officers and directors owe a fiduciary duty to the corporation). The sixth issue, as stated, is a challenge to the legal and factual sufficiency of the evidence of many of the findings of fact that Appellants and the POA challenged in their fifth issue concerning their claim for an accounting.

The trial court determined that Appellants and the POA failed to present any credible evidence that the act of hiring Double Diamond Management to serve as the property manager of the POA constituted a breach of fiduciary duty. The trial court further determined that the POA did not suffer any damages as a result of the service agreement with Double Diamond Management, nor did Ward and Gracy benefit from it. In that regard, the trial court denied the request of Appellants and the POA to pierce the corporate veil with respect to Ward and all of the corporate entities.

The claims by Appellants and the POA against Ward and Gracy are essentially the same as their claims against Double Diamond, Inc. and Double Diamond Management for an accounting that we addressed in the fifth issue. They essentially contend that the trial court erred in finding Double Diamond Management's evidence of the accuracy of the expenses charged to be credible. As we previously noted, we do not disturb the trial court's credibility determinations. For the same reason, the trial court did not err by accepting the proof of the charges assessed by Double Diamond Management as being fair and accurate. We overrule Appellant's sixth issue.

*Texas Citizens Participation Act*

In their eighth issue, Dipprey, Priddy, Hill, and Ken Hill Investment Group, Inc. (KHIG) (collectively Movants) assert that the trial court erred when it failed to award attorney's fees and sanctions based on Movants' successful prosecution of a

motion to dismiss filed pursuant to the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE ANN., §§ 27.001–.011 (West 2015) (the TCPA).[9] Double Diamond, Inc., Double Diamond Management, and Ward (collectively Cross-Appellants) (1) respond that the trial court's failure to award sanctions does not constitute reversible error and that, because the trial court erred when it granted the motion to dismiss, there was no basis for the trial court to award attorney's fees and sanctions and (2) in one issue on cross-appeal, contend that the trial court improperly granted the TCPA motion to dismiss because Movants failed to timely file evidence in support of the motion and failed to carry their burden to establish that the TCPA applies to any of the dismissed counterclaims.

As relevant to these complaints, the record establishes that Cross-Appellants filed counterclaims (1) against Movants for malicious prosecution, business disparagement, and conspiracy; (2) against Dipprey for breach of fiduciary duty and tortious interference; and (3) against Hill for tortious interference and breach of a nondisclosure agreement. Movants filed a motion to dismiss the counterclaims pursuant to the TCPA and requested that they be awarded attorney's fees, costs, and expenses incurred in connection with the motion.

In amended counterclaims, Cross-Appellants nonsuited the claim for malicious prosecution and added claims for tortious interference against Priddy and KHIG. Cross-Appellants also filed a response to the motion to dismiss in which they asserted that the motion was not supported by timely filed evidence, that Movants had not carried their burden to show that the TCPA applied to the

---

[9]The Texas legislature amended the TCPA effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, 12 (H.B. 2730) (codified at TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001, .003, .005–.007, .0075, .009–.010). Because the underlying lawsuit was filed prior to September 1, 2019, the law in effect before that date applies. *See id.* §§ 11–12. For convenience, all citations to the TCPA in this opinion are to the version of the statute prior to September 1, 2019. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500.

counterclaims, and that they had established by clear and specific evidence a prima facie case for each element of each counterclaim.

The trial court denied the motion to dismiss as to (1) the claim for breach of fiduciary duty against Dipprey and (2) the claims for tortious interference and breach of the nondisclosure agreement against Hill. The trial court granted the motion to dismiss as to (1) the claims for tortious interference against Dipprey, Priddy, and KHIG and (2) the claims for business disparagement, conspiracy, and malicious prosecution against Movants.[10] In its order, the trial court stated that a hearing would be set for the determination of attorney's fees, costs, expenses, and sanctions incurred in connection "with the advancement of the TCPA Motion pursuant to TCPA § 27.009."

Movants filed a motion for an award of attorney's fees and sanctions and provided evidence in support of the requested fees and sanctions. The trial court held a hearing on the motion on February 20, 2018, at which it heard Movants' evidence and Cross-Appellants' "response thereto." The trial court did not sign an order on Movants' motion for attorney's fees and sanctions and did not award any attorney's fees or sanctions to Movants in the final judgment. Further, in the final judgment, the trial court ordered that "any relief sought by any of the parties" that was not specifically granted in the judgment was denied.

We generally review a trial court's decision on an award of attorney's fees or the assessment of sanctions for an abuse of discretion. *Landry's, Inc. v. Animal Legal Def. Fund*, No. 19-0036, 2021 WL 2021130, at *2 (Tex. May 21, 2021) (applying abuse-of-discretion standard to the trial court's sanction award under the

---

[10]Although Cross-Appellants' nonsuited their counterclaim for malicious prosecution before the trial court ruled on the motion to dismiss, a party may not dismiss a claim in order to avoid a TCPA motion to dismiss. *Davis v. Gulf Coast Auth.*, No. 11-19-00309-CV, 2020 WL 5491201, at *4 n.3 (Tex. App.—Eastland Sept. 11, 2020, no pet.) (mem. op.); *see also Clayton Mountain, LLC v. Ruff*, No. 11-20-00034-CV, 2021 WL 3414754, at *7 (Tex. App.—Eastland Aug. 5, 2021, no pet. h.) (mem. op.).

TCPA); *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (holding that the determination of a reasonable attorney's fee under the TCPA "rests within the court's sound discretion"). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without regard to guiding rules and principles. *Landry's*, 2021 WL 2021130, at *2.

Under the version of the statute applicable to this case, when a trial court dismissed a legal action pursuant to the TCPA, it was required to award the successful movant:

> (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and

> (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions.

CIV. PRAC. & REM. § 27.009(a). Accordingly, the trial court abused its discretion when it failed to award Movants reasonable attorney's fees incurred in connection with defending against the dismissed counterclaims and to assess sanctions against Cross-Appellants. *See id.*; *United Locating Servs., LLC v. Fobbs*, 619 S.W.3d 863, 875 (Tex. App.—Houston [14th Dist.] 2021, no pet.). We, therefore, turn to whether the trial court's errors require reversal. *See* TEX. R. APP. P. 44.1 (setting out the standard for reversible error in civil cases).

Although sanctions under Section 27.009(a) are mandatory, the proper amount of the sanctions is left to the trial court's discretion. *See* CIV. PRAC. & REM. § 27.009(a)(2); *Rich v. Range Res. Corp.*, 535 S.W.3d 610, 613 (Tex. App.—Fort Worth 2017, pet. denied). If it determines that a party is unlikely to file a similar action in the future, the trial court may award nominal sanctions in the amount of $1. *Rich*, 535 S.W.3d at 613; *see also Morales v. Barnes*, No. 05-18-00767-CV, 2020 WL 597346, at *4 (Tex. App.—Dallas Feb. 7, 2020, pet. denied) (mem. op.).

A trial court's rejection of a request for sanctions under Section 27.009(a) constitutes an implied finding that the nonmovant did not need to be deterred. *Rich*, 535 S.W.3d at 613; *see also Tatum v. Hersh*, 559 S.W.3d 581, 588 (Tex. App.—Dallas 2018, no pet.). In such a case, the failure to award a nominal amount of damages is harmless error. *Rich*, 535 S.W.3d at 614 ("It is well-settled that a trial court's failure to award $1 is not reversible error."); *see also Tatum*, 559 S.W.3d at 588.

In this case, the trial court implicitly determined that no sanctions were necessary to deter Cross-Appellants from bringing similar suits in the future. Unless the record establishes that this finding was an abuse of discretion, the trial court had discretion to award nominal sanctions and its failure to make that award is harmless error. *See Tatum*, 559 S.W.3d at 588.

Movants, as the party seeking relief, had the burden to bring forward a sufficient record to show reversible error. *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (per curiam); *Kocaoglan v. Law Office of Chris Sanchez, P.C.*, No. 13-19-00596-CV, 2021 WL 161395, at *4 (Tex. App.—Corpus Christi–Edinburg Jan. 14, 2021, pet. denied) (mem. op.). The record reflects that, on February 2, 2018, the trial court held a hearing on Movants' request for sanctions at which it heard Movants' evidence as well as Cross-Appellants' "response thereto." Movants did not request that a transcript of this hearing be included in the appellate record. Because Movants neither provided a complete reporter's record nor complied with Rule 34.6(c) of the Texas Rules of Appellate Procedure,[11] we must presume that the omitted portion of the record supports the trial court's implicit finding that no sanctions were necessary to deter Cross-Appellants from filing a similar action in the future. *See Christiansen*, 782 S.W.2d at 843–44; *Kocaoglan*, 2021 WL 161395, at *4. Therefore, while the trial court erred when it failed to award

---

[11]Rule 34.6(c) of the Texas Rules of Appellate Procedure sets out the procedure that an appellant must follow when it seeks to appeal based on a partial reporter's record. *See* TEX. R. APP. P. 34.6(c).

a nominal sanction against Cross-Appellants, that error was harmless, and we will not reverse the trial court's judgment on that basis.

The trial court was also statutorily required to award Movants the reasonable attorney's fees that they incurred in defending against the dismissed counterclaims. CIV. PRAC. & REM. § 27.009(a)(1); *Sullivan*, 488 S.W.3d at 299. "A 'reasonable' attorney's fee 'is one that is not excessive or extreme, but rather moderate or fair.'" *Sullivan*, 488 S.W.3d at 299 (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010)). Accordingly, while the trial court had discretion to determine the amount of reasonable fees to be awarded, it did not have discretion to award no fees. *See Sullivan*, 488 S.W.3d at 299; *see also D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 441–42 (Tex. 2017); *Morales*, 2020 WL 597346, at *2.

Cross-Appellants, however, argue that Movants were not entitled to recover any attorney's fees because the counterclaims were not properly dismissed and assert in a cross-issue that the trial court erred when it partially granted the motion to dismiss because the Movants failed to establish that the TCPA applies to the counterclaims. Cross-Appellants request that we affirm the trial court's take-nothing judgment.

Generally, we can grant only the relief requested by a party. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 392 (Tex. 2011) ("Generally, a party is not entitled to relief it does not request."). We recognize that, if the trial court erred when it partially granted Movants' TCPA motion to dismiss, Movants would not be entitled to recover attorney's fees pursuant to Section 27.009(a). However, the appropriate remedy for any error by the trial court in granting Movants' motion to dismiss would be the reversal of the erroneous portions of the trial court's order of dismissal and final judgment and a remand of the improperly dismissed counterclaims to the trial court for further proceedings. *See Neurodiagnostic Consultants, LLC v. Nallia*, No. 03-18-00609-CV, 2019 WL

4231232, at \*12 (Tex. App.—Austin Sept. 6, 2019, no pet.) (mem. op.); *Berry v. ETX Successor Tyler*, No. 12-18-00095-CV, 2019 WL 968528, at \*8–9 (Tex. App.—Tyler Feb. 28, 2019, no pet.) (mem. op.).

Although we have the power to remand a case, *see* TEX. R. APP. P. 43.3, it is improper for us to sua sponte grant relief that the party has not sought and has indicated that it does not want. *State v. Brown*, 262 S.W.3d 365, 370 (Tex. 2008); *see Stevens v. Nat'l Educ. Ctrs., Inc.*, 11 S.W.3d 185, 186 (Tex. 2000) (per curiam) (denying review where the petitioner raised a complaint for which remand would have been the appropriate remedy but the petitioner "specifically requested that this Court not remand for a new trial and prayed only for rendition"). Pursuant to *Stevens*, courts have affirmed cases that might otherwise warrant remand when the party "expressly rejects the only available relief." *Garza v. Cantu*, 431 S.W.3d 96, 109 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *see also Molina v. Moore*, 33 S.W.3d 323, 326 (Tex. App.—Amarillo 2000, no pet.) ("[I]f an appealing party chooses to seek only reversal and rendition of judgment, then the appellate court will not reverse and remand the case."). Because Cross-Appellants have rejected the only relief available to them for the asserted error, we decline to consider their cross-issue. *See Stevens*, 11 S.W.3d at 186.

Having held that the trial court erred when it failed to award any attorney's fees incurred by Movants in connection with the counterclaims that were dismissed pursuant to the TCPA, we must consider whether remand or rendition is appropriate. The reasonableness of attorney's fees that are authorized by a statute is a fact question. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). Movants assert that "[t]he record contains uncontroverted evidence of the reasonable fees for the TCPA motion (adjusted for partial success)" and request that we render judgment for attorney's fees of $59,814.10 and appellate fees of $20,000. However, the record indicates that there was a hearing on February 20,

2018, at which the trial court heard Movants' evidence in support of their request for attorney's fees as well as Cross-Appellants' "response thereto." Again, we do not have a reporter's record from that hearing. Based on the record before us, we cannot conclude that the evidence of Movants' attorney's fees was uncontroverted.

We overrule (1) Movants' eighth issue to the extent that they complain that the trial court failed to assess sanctions against Cross-Appellants and (2) Cross-Appellants' sole issue. We sustain Movants' eighth issue to the extent that they complain that the trial court failed to award reasonable attorney's fees that Movants incurred in defending against counterclaims that were dismissed pursuant to the TCPA, reverse the trial court's award of no attorney's fees, and remand the issue of Movants' reasonable attorney's fees with respect to the TCPA to the trial court for further proceedings.

*Easement or Irrevocable License*

In their tenth issue, Appellants and the POA assert that the trial court should have entered a declaratory judgment to the effect that the property owners either possess an easement or an irrevocable license to use the amenities of The Cliffs. Appellants and the POA raise this issue in only two pages of their brief, and they support it with a citation to Plaintiffs' Exhibit No. 90, which is a reporter's record from a hearing on a motion to abate and temporary injunction. Including exhibits, the reporter's record is over 250 pages. However, Appellants and the POA have not cited to any specific pages in this lengthy exhibit.

The trial court concluded that the claims of Appellants and the POA to an easement or irrevocable license should be denied as a matter of law. Appellants and the POA have not challenged this specific conclusion of law. The trial court based its ruling on its determination that Appellees had not claimed to have the right to revoke or impede a member of The Cliffs from utilizing the common areas or recreational facilities. Appellants and the POA essentially contend that the trial

40

court erred in making this determination based upon conduct by Ward in the past in the form of threatened action in February 2019 that the operations of the facilities and amenities of The Cliffs would have to close if the new board diverted the funds of the POA from Double Diamond Management.

We agree with the trial court that this matter does not present an actual controversy to be resolved by a declaratory judgment. *See Lynch*, 595 S.W.3d at 684. In this regard, the evidence before the trial court supported its determination that a controversy did not currently exist. We overrule Appellants' and the POA's tenth issue.

*Excluded Evidence*

In their eleventh issue, Appellants and the POA contend that the trial court erred by not admitting evidence of overcharges that they sought to offer. They reference an offer of proof. They also make reference to this offer of proof in connection with the argument of their fifth issue. However, Appellants and the POA have not cited any authority in support of their assertion that the trial court erred in denying the admission of this offer of proof. A brief must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "Failure to cite legal authority or to provide substantive analysis of the legal issues presented results in waiver of the complaint." *Smale v. Williams*, 590 S.W.3d 633, 639 (Tex. App.—Texarkana 2019, no pet.). Accordingly, Appellants and the POA have waived their evidentiary complaint for appellate review.

Moreover, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (citing *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005)). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). An appellate court

should not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1; *Malone*, 972 S.W.2d at 43; *Nat'l Freight, Inc. v. Snyder*, 191 S.W.3d 416, 421 (Tex. App.—Eastland 2006, no pet.); *see Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989).

The offer of proof consisted of Appellants' and the POA's attempt to assert that Double Diamond Management overcharged the POA for operating The Cliffs because the POA subsequently found contractors willing to charge less after Appellants gained control of the board of directors. The trial court denied its admission on multiple grounds. First, the trial court ruled that it had not been timely disclosed in discovery. At the end of the offer of proof, the trial court noted that there was a discrepancy in the amounts charged by the new contractors for electricity for the golf course. The trial court also stated:

> I've got serious issues about a damage calculation under that model anyway. I mean, [the new golf course company] has been out there three weeks. I mean, they don't have a track record out there. We don't know how well they're going to do or not do.
>
> I mean, I'm not going to use those figures. Those figures are unreliable to me, if you ask me my opinion on it. We haven't got to the heat of the Texas summer yet. Lines haven't been breaking. They haven't been mowing. They're probably just starting to mow out there.
>
> There's too much uncertainty with these figures over here in my mind to justify damage calculations.

For the reasons stated by the trial court, it did not abuse its discretion by denying the damage calculations that Appellants and the POA sought to offer. We overrule Appellants' and the POA's eleventh issue.

### *This Court's Ruling*

We reverse the trial court's judgment to the effect that the development period is not ripe for adjudication. We render judgment that The Cliffs are no longer in the

development period, and we remand all issues concerning the effect of Section 209.0041 of the Texas Property Code on the governance of The Cliffs Property Owners' Association, Inc. to the trial court for further proceedings. We also reverse the trial court's award of no attorney's fees to Movants for their TCPA claims and remand the issue of Movants' reasonable attorney's fees with respect to the TCPA to the trial court for further proceedings. In all other respects, the judgment of the trial court is affirmed.

JOHN M. BAILEY

CHIEF JUSTICE

October 21, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.